OPINIONS OF THE SUPREME COURT OF OHIO
**** SUBJECT TO FURTHER EDITING ****

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

The State of Ohio, Appellee, v. Scudder, Appellant.
[Cite as State v. Scudder (1994),    Ohio St.3d    .]
Criminal law -- Aggravated murder -- Death penalty upheld, when.
     (No. 92-2565 -- Submitted October 12, 1994 -- Decided December 20, 1994.)
     Appeal from the Court of Appeals for Franklin County, No. 91AP-506.

On the evening of February 6, 1989, Kevin P. Scudder, appellant, met with two friends, Robert Muncy and Arnold James Dempsey, Jr. to celebrate appellant's birthday. At midnight, the men drove in appellant's Buick to the home of Muncy's friend, fourteen-year old Tina Baisden. Appellant had promised to purchase Tina a new outfit at an all-night department store, and Tina was able to sneak out to join the trio.

After cruising around Columbus, the group decided to visit a friend in Circleville. On the way to Circleville, appellant asked Tina to pretend to be his girlfriend. On February 7, at approximately 2:30 a.m., appellant, Tina, Muncy and Dempsey left Circleville in appellant's Buick to return to Columbus. On the return trip, Tina suggested that she should be driven home first. Muncy agreed, but appellant vehemently disagreed. Appellant told Muncy, "I run this fucking boat, I pay for the gas, I pay for the party, if you don't like it, I'll put a .44 slug in between your lungs." Appellant insisted that he (appellant) would take Tina home last.

In accordance with appellant's instructions, Dempsey, the driver, drove Muncy home first. Dempsey, appellant and Tina then drove to Dempsey's home. There, appellant left the car to urinate in an alley behind Dempsey's house. At that time, Tina told Dempsey that she was afraid of appellant. Dempsey knew that appellant had a "Deerslayer" hunting knife in the glove compartment of the Buick. Therefore, Dempsey gave Tina a pocket knife for her protection. At approximately 3:15 a.m., appellant and Tina drove away from Dempsey's home in appellant's Buick.

On February 7, 1989, at approximately 4:10 a.m., Gary E. Snyder, appellant's neighbor, saw appellant and appellant's Buick in the parking lot of an apartment complex. Approximately ten minutes later, Snyder saw appellant throw an object into a trash dumpster. According to Snyder, appellant then went to appellant's apartment and began screaming that he had been shot. Appellant also said something like "I hurt a little girl," or "I want my little girl." Another neighbor, Bonnie Fletcher, saw appellant covered with blood. Fletcher heard appellant say that "niggers" were chasing him and that the alleged pursuers had killed a girl named Tina. An emergency squad responded and transported appellant to Mt. Caramel West Hospital.

Dr. David Androw, a surgical resident physician, examined appellant. Appellant was covered with blood -- more blood than could be attributed to his wounds. Appellant had a four-inch laceration on his right forearm, a small stab wound above his left eye, and a small stab wound in his upper back. Appellant's wounds were not life-threatening, his vital signs were normal, and hospitalization was therefore unnecessary. However, appellant claimed that he had been shot, and x-rays revealed a bullet lodged in appellant's upper thorax. Androw was confused, since all of appellant's wounds were stab wounds. Appellant was rude and uncooperative with doctors and police. He would not permit Androw to treat the wounds. Appellant told a security guard at the hospital that he had been attacked by two black men who had stabbed him and shot at him. Eventually, appellant was asked to leave the hospital. Later, Androw reviewed appellant's file from a previous hospital stay and discovered that the bullet lodged in appellant's body had been there about two years.

Later that morning, on February 7, 1989, appellant went to Grant Hospital, where he was admitted for treatment of his stab wounds and the alleged gunshot wound. That afternoon, appellant called police to report that he had been shot and robbed. That evening, appellant talked with police on two separate occasions. Appellant told police that he and Tina had picked up two male hitchhikers after leaving Dempsey's home. Appellant claimed that the hitchhikers had tried to rob him and had forced him to drive to a secluded field off Groveport Road. According to appellant, the robbers then shot and stabbed him and stabbed Tina while she was seated in the back seat of the Buick. Appellant stated that one of the robbers removed Tina from the passenger's side of the vehicle while appellant and the other robber exited the vehicle from the driver's side. At that time, according to appellant, he managed to escape in the Buick, leaving Tina in the field with the assailants. On the night of February 7, police began searching for Tina in the area where appellant claimed to have left her. On February 8, 1989, the search continued.

On February 9, a game warden accidentally discovered Tina's frozen body in a secluded field approximately five miles from where appellant claimed to have left her. The evidence at the scene indicated that Tina had been killed where her body was found. She had been stabbed or cut forty-six times. Her pants had been pulled down to her ankles, and her panties had been pulled down to midthigh. Bloody hand and finger smears

were found on her legs, inner thighs, and near the vaginal area.

Tina's stab wounds were consistent with having been caused by a knife similar to the one appellant possessed on the night of the murder. Bloody impressions on Tina's clothing were of a size and shape that indicated they had been made with a knife similar to the "Deerslayer" knife. The murder weapon was never recovered by police.

Drops of blood other than Tina's were found on Tina's face, rib cage and thighs. Expert analysis of photographs taken at the crime scene revealed that the blood had dripped onto Tina's mostly nude body as her killer stood directly over her. DNA analysis revealed that it was highly probable the drops of blood, and other blood samples taken from Tina's clothing, had come from appellant.

A broken stick found at the murder scene matched a wood chip recovered from the emergency brake cable on the underside of appellant's car. The wood chip fit the broken stick "tongue-and-groove," proving that appellant's Buick had been at the murder scene.

Forensic experts found blood in various locations within appellant's car, especially in the front seat. The bloodstains were inconsistent with appellant's claim that Tina had been stabbed in the back seat of the vehicle and dragged out the passenger's side. Blood splatter on the Buick, including bloodstains on the frame, wheel and brake drum, indicated that Tina had been stabbed to death while lying on the ground near the driver's side of the Buick. Additionally, Tina's bloody fingerprints were found on the outside driver's window of the Buick, as if Tina had gripped the glass from the interior of the vehicle while the door was open. The "Deerslayer" knife was missing from the glove box. Bloodstains on the glove box indicated that that compartment had been opened by someone with bloody hands.

Appellant became a suspect in the murder on February 10, 1989, when police spoke with Dr. Androw and learned that the bullet lodged in appellant's body was several years old. In May 1989, appellant was indicted on two separate counts for the aggravated murder of Tina. Count One charged appellant with the purposeful killing of Tina during the commission of an attempted rape. Count Two charged appellant with the purposeful killing of Tina during the commission of a kidnapping. Each of the two counts of aggravated murder carried death penalty specifications alleging that the murder had occurred during the commission of a kidnapping and attempted rape. Appellant was also indicted on one count of attempted rape and one count of kidnapping.

Appellant was tried before a jury. The jury found appellant guilty of all charges and specifications alleged in the indictment. Following a mitigation hearing, the jury recommended that appellant be sentenced to death for each of the two counts of aggravated murder. The trial court merged the two counts of aggravated murder and sentenced appellant to death. For the remaining offenses, appellant was sentenced in accordance with law. On appeal, the court of appeals affirmed appellant's convictions and sentences, including the sentence of death.

The cause is now before this court on an appeal as of

right.

Michael Miller, Franklin County Prosecuting Attorney, Joyce S. Anderson and Katherine Press, Assistant Prosecuting Attorneys, for appellee.

David H. Bodiker, Ohio Public Defender, Pamela A. Conger and Laurence E. Komp, Assistant Public Defenders, for appellant.

Douglas, J.    Appellant presents a number of issues for our consideration.  (See Appendix, infra.)  We have carefully considered appellant's propositions of law and have reviewed the death sentence for appropriateness and proportionality. Upon review, and for the reasons that follow, we affirm the judgment of the court of appeals and uphold the sentence of death.

I

R.C. 2929.05 requires this court to review capital cases in a certain manner.  However, the statute does not require that we address and discuss, in opinion form, every proposition of law raised by the parties.  State v. Poindexter (1988), 36 Ohio St.3d 1, 3, 520 N.E.2d 568, 570; State v. Bonnell (1991), 61 Ohio St.3d 179, 181, 573 N.E.2d 1082, 1085; and State v. Hawkins (1993), 66 Ohio St.3d 339, 342, 612 N.E.2d 1227, 1230.

Here, appellant presents a number of arguments which have previously been addressed by this court, and which have been resolved in a manner unfavorable to appellant.  Many of the matters raised by appellant merit no discussion given the events at trial and the governing law.  Moreover, a number of appellant's arguments have been waived, since appellant failed to preserve the alleged errors at either the trial court or appellate level.  Upon review of appellant's propositions of law, we fail to detect any errors that would undermine our confidence in the outcome of appellant's trial.  We address in detail only those issues that merit some discussion.

II

Appellant's trial commenced on October 12, 1990.  On October 26, 1990, the prosecutor provided appellant with a fingerprint analysis report concerning fingerprints that had been lifted from appellant's Buick in February 1989.  On November 1, 1990, the state called Everett Justice, a fingerprint expert, to testify for the prosecution.  Appellant objected to Justice's proposed testimony on the basis that the state had not provided appellant with a fingerprint analysis report before trial.  Appellant requested that the trial court preclude Justice from testifying regarding the fingerprint evidence.  The trial court overruled appellant's objection and permitted Justice to testify.  Appellant never requested a continuance to prepare for Justice's testimony or to conduct an independent fingerprint analysis.

Additionally, appellant was not specifically informed before trial that Dr. Robin Cotton, the state's DNA expert, would be called to testify at trial concerning DNA frequency estimates.  Several months before trial, appellant had been provided with the state's DNA report matching appellant's blood to the blood found on the victim.  However, a DNA frequency report had not been prepared until after trial commenced.  At trial, Cotton testified that appellant's blood matched the

blood samples found on the victim's body and clothing.  She testified further that the statistical frequency with which appellant's DNA banding pattern appears in the Caucasian and African-American populations is one in 280,000 and one in 1.3 million, respectively.  Appellant did not object to Cotton's testimony concerning DNA frequency estimates until well after Cotton had testified on direct and cross examination.  Appellant never requested a continuance with respect to the DNA frequency statistics.

Similarly, appellant was not informed before trial that Robert Young, the state's expert in blood splatter and bloodstain interpretation, would be called to testify for the prosecution.  Indeed, Young was not contacted to analyze the photographic evidence taken at the crime scene until after trial commenced.  At trial, appellant sought to bar Young from testifying because, among other reasons, the state had not notified appellant of this expert prior to trial.  The trial court overruled appellant's objections.  Following a lengthy voir dire of the witness, appellant requested a forty-eight-hour continuance to prepare for Young's trial testimony.  Appellant was granted a continuance in excess of forty-eight hours.  Thereafter, Young was permitted to testify as an expert in blood splatter interpretation.

In his first proposition of law, appellant claims that he was deprived of a fair trial because the prosecutor violated the rules of discovery by failing to notify appellant before trial that the state would present expert witnesses concerning blood splatter and fingerprint evidence, and expert testimony concerning DNA frequency estimates.  Appellant suggests that the state engaged in "trial by ambush," and that the trial court abused its discretion in failing to exclude the testimony of the state's "surprise" witnesses.  We reject appellant's arguments for two reasons.  First, appellant did not raise these issues in the court of appeals.  Thus, his arguments have been waived.  Second, appellant has failed to demonstrate that the trial court abused its discretion by allowing the witnesses to testify.

Crim.R. 16(E)(3) provides for the regulation of discovery in a criminal case and permits a trial court to exercise discretion in determining the appropriate sanction for a discovery violation.  State v. Wiles (1991), 59 Ohio St.3d 71, 78, 571 N.E.2d 97, 110; State v. Parson (1983), 6 Ohio St.3d 442, 445, 6 OBR 485, 487, 453 N.E.2d 689, 691; and State v. Edwards (1976), 49 Ohio St.2d 31, 42, 3 O.O.3d 18, 24, 358 N.E.2d 1051, 1059.  Crim.R. 16(E)(3) provides that:

"If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."

We have held that where a prosecutor violates Crim.R. 16 by failing to provide the name of a witness, a trial court does not abuse its discretion in allowing the witness to testify where the record fails to disclose (1) a willful violation of

the rule, (2) that foreknowledge would have benefited the accused in the preparation of his or her defense, or (3) that the accused was unfairly prejudiced. State v. Heinish (1990), 50 Ohio St.3d 231, 553 N.E.2d 1026, syllabus. See, also, Wiles, supra, 59 Ohio St.3d 71, 79, 571 N.E.2d 97, 110; and Parson, supra, 6 Ohio St.3d 442, 6 OBR 485, 453 N.E.2d 689, syllabus. The same tripartite test applies for determining whether a trial court has abused its discretion in admitting other evidence that was not properly disclosed under Crim.R. 16. See, generally, Parson, supra.

In the case at bar, we find that the trial court did not abuse its discretion in allowing the testimony of the various witnesses.

First, we are convinced that the prosecutor did not willfully violate Crim.R. 16. A review of the record reveals that the state prepared its case late, and inadvertently failed to have a fingerprint analysis completed before trial. Upon discovery of that mistake, a fingerprint examiner was immediately contacted by the prosecution. A fingerprint analysis report was provided to the defense the day it was written. The state's blood splatter evidence became available under similar circumstances. Further, we find that the state's failure to provide DNA frequency estimates before trial was also due to an inadvertent mistake.

Second, we do not believe that foreknowledge would have aided appellant in the preparation of his defense. As to Dr. Cotton's testimony, defense counsel knew months before trial that DNA evidence would be forthcoming, and counsel must have known that frequency statistics are an integral part of DNA evidence. By April 1990, appellant had the prosecution's DNA report (but not a frequency report) and his own DNA experts were testing samples and presumably working on DNA frequency statistics. Accordingly, we are not persuaded that appellant was unduly surprised by Cotton's testimony or the contents of the state's DNA frequency report. Nor are we convinced that prior knowledge of the names of the fingerprint and blood splatter experts would have aided appellant in preparation.

Third, appellant has failed to show that he was unfairly prejudiced by the admission of the testimony of the various experts. Appellant requested a continuance to prepare for Young's trial testimony concerning blood splatter analysis. The continuance was granted and was of sufficient duration to permit defense counsel to prepare for cross-examination. Further, appellant never requested a continuance to prepare for the DNA and fingerprint evidence even though a continuance would have been sufficient to rectify any claimed harm. Under these circumstances, the trial court could have properly determined that appellant was prepared to go forward. See Edwards, supra, 49 Ohio St.2d 31, 42-43, 3 O.O.3d 18, 24-25, 358 N.E.2d 1051, 1060. Thus, no prejudice occurred. See Wiles, supra, 51 Ohio St.3d 71, 80, 571 N.E.2d 97, 111.

Contrary to appellant's contentions, we find that the trial court did not abuse its discretion in allowing the testimony of the various witnesses. Accordingly, we reject appellant's first proposition of law.

                              III
During discovery, appellant moved for the pretrial release

of all statements made by Muncy and Dempsey, apparently claiming a right to the statements under Crim.R. 16(B)(1)(a)(i)-(iii)1 and (B)(1)(g)2.  The trial court denied appellant's requests.

In his second proposition of law, appellant suggests that he was entitled to the statements of Muncy and Dempsey prior to trial.  We disagree.  Muncy and Dempsey were not "co-defendants" and, thus, appellant was not entitled to pretrial release of their statements under Crim.R. 16(B)(1)(a).  See State v. Wickline (1990), 50 Ohio St.3d 114, 118, 552 N.E.2d 913, 918; and State v. Lane (1976), 49 Ohio St.2d 77, 3 O.O.3d 45, 358 N.E.2d 1081, paragraph two of the syllabus.  Nor was appellant entitled to pretrial release of the statements under Crim.R. 16(B)(1)(g), which governs the procedure for release of a witness's inconsistent prior written or recorded statements after the witness has testified on direct examination at trial.

In his second and twenty-fourth propositions of law, appellant also contends that Crim.R. 16(B)(1)(g) was violated when the trial court denied him access to various summaries by police detectives of their interviews with particular witnesses.  Specifically, following the direct examination of several witnesses, the trial court reviewed the applicable summaries and determined that the summaries did not constitute prior "statements" made by the witnesses.  Therefore, the trial court found that appellant was not entitled to the summaries under the provisions of Crim.R. 16(B)(1)(g).  We find no reversible error in this regard.  We assume that the trial court was perfectly capable of determining what constitutes a witness's "statement" under Crim.R. 16(B)(1)(g).  Further, the summaries are not included in the record before this court.  In this regard, we note that appellant neither requested that the summaries be included in the record, nor objected when the summaries were not preserved in the record for purposes of appellate review.  Thus, appellant has failed to demonstrate prejudice, and none will be presumed.  See, generally, State v. Jenkins (1984), 15 Ohio St.3d 164, 226, 15 OBR 311, 364-365, 473 N.E.2d 264, 316-317.

In his second proposition of law, appellant also suggests that the prosecutor improperly attempted to exonerate Muncy and Dempsey as alternative suspects in the murder, bolstered their credibility at trial, and thereby deprived appellant of the opportunity to effectively argue that Muncy and Dempsey were responsible for the crimes.  However, we find that the facts of record, the evidence at trial, and even appellant's own initial statements to police exonerated Muncy and Dempsey from any involvement in these crimes.  Contrary to appellant's assertions, the record in this case does not implicate anyone but appellant in the aggravated murder of Tina.

Accordingly, we reject appellant's second and twenty-fourth propositions of law.

IV

At trial, Muncy was asked on cross-examination whether police had instructed him prior to trial not to speak with anyone from appellant's defense team.  Muncy indicated that he had been so instructed and, in fact, had refused to speak with defense investigator Tami Wall.  Later, on redirect

examination, Muncy testified as follows:

"Q. Mr. Schneider [appellant's trial counsel] asked you about Detective Morris telling you not to talk to anybody about this.

"A. Right.

"Q. Do you remember what that was in relation to?

"A. He said don't talk to the media, friends or family. So I just -- to the best of my knowledge, I assumed that was everyone, anybody who didn't have anything to do with the detective bureau.

"Q. Did he explain that that would -- that was because, if you talked, it might hurt their investigation?

"A. Correct.

"Q. Now, when Tami Wall [the defense investigator] came out, did she come out to your house? Where did she come and talk to you?

"A. To my house.

"* * *

"Q. Did she inform you she was working for Kevin Scudder?

"A. Yes.

"Q. Did she tell you that in fact because you were a potential witness, you had no obligation at all to talk to her if you chose not to?

"A. Yes.

"Q. You exercised that right, didn't you?

"A. Yes."

In his third proposition of law, appellant contends that the state instructed Muncy not to speak with defense counsel and thereby impeded appellant's ability to adequately prepare for trial. Appellant did not raise this issue in the court of appeals. Thus, the issue has been waived. Additionally, a review of the record demonstrates that appellant's argument lacks merit. Muncy was never specifically instructed not to speak with the defense. Further, appellant's defense investigator instructed Muncy that Muncy was not required to speak with her. Muncy apparently chose to exercise that option -- and he had every right to do so. See State v. Zeh (1987), 31 Ohio St.3d 99, 31 OBR 263, 509 N.E.2d 414, paragraph one of the syllabus.

We find that the state did not impede appellant's access to the witness. Accordingly, appellant's third proposition of law is not well taken.

V

At trial, appellant's wallet was admitted into evidence without objection. The wallet contained numerous items that had not been individually admitted into evidence. Items within the wallet included a prison identification card, numerous business cards, a handwritten letter or notation that someone had heard that appellant was "going to get into trouble for rape," and a document indicating that appellant had been on parole.

In his twenty-fifth proposition of law, appellant claims that the contents of the wallet should have been removed before it was submitted to the jury. Appellant suggests that he was unfairly prejudiced because the contents of the wallet may have been considered by the jury during deliberations. The court of appeals rejected appellant's contentions, stating the following:

"Defendant made no objection to admission of the wallet into evidence even though it was obvious that the wallet contained a large quantity of paper, most of which was obviously harmless.  The evidence against defendant was overwhelming and, while the contents of the wallet should not have been sent to the jury, that fact alone in all probability did not sway the jury, even if the jury looked through the contents and were aware of the harmful parts.  This situation does not lend itself to the plain error doctrine under Crim.R. 52(B).  Plain error should only be recognized 'under exceptional circumstances and only to prevent a manifest miscarriage of justice.'  State v. Long (1978), 53 Ohio St.2d 91 [7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus].  No such circumstances exist here.

"* * *

"The failure to extract the contents of defendant's wallet presents a situation similar to that of * * * [State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, and State v. Spirko (1991), 59 Ohio St.3d 1, 570 N.E.2d 229].  There was no objection as in Bradley.  The inclusion was not intentional and was missed by both parties as in Spirko.  There is no indication that the jury actually reviewed the contents of the wallet and the only witness who testified regarding the wallet said only that it contained 'papers.'  The inferences defendant assumes that the jury made from the two or three inflammatory items contained in the plethora of papers stored in his wallet are purely speculative and, therefore, the inadvertent inclusion did not constitute reversible error."

We agree with the court of appeals' assessment of this issue.  Accordingly, we reject appellant's twenty-fifth proposition of law.

VI

In his thirty-first through thirty-third propositions of law, appellant claims that he was deprived of the effective assistance of counsel throughout the trial and appellate proceedings.  In considering appellant's arguments, we find that appellant has failed to meet his burden of establishing ineffective assistance under the standards set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.  Therefore, we reject appellant's thirty-first, thirty-second and thirty-third propositions of law.

VII

In his thirty-fifth proposition of law, appellant contends that the evidence was not sufficient to establish his identity as the perpetrator of the crimes.  Appellant's argument is not well taken.

In the case at bar, appellant had a knife and desperately wanted to be alone with Tina.  Appellant and Tina left Dempsey's home on February 7, 1989, at approximately 3:15 a.m.  Approximately one hour later, appellant was covered with blood and was seen throwing an object (perhaps the murder weapon) into a trash dumpster.  The object made a noise as it hit the dumpster.  Appellant stood in a parking lot for approximately ten minutes before hysterically claiming that he had been shot and that someone was after him.  During this period, appellant had apparently concocted a story to explain Tina's disappearance and to insulate himself from suspicion.  That

story proved to be utterly false. The evidence, if accepted, clearly established that Tina was attacked in the front seat of appellant's Buick, dragged out the driver's side, forcibly undressed, and stabbed to death while lying on the ground near the driver's side of appellant's vehicle. DNA evidence linked appellant to the killing. Evidence was also presented which, if believed, established that Tina was killed with a knife similar to the one appellant possessed on the night of the murder. Further, a broken stick found at the murder scene matched a wood chip recovered from the underbody of appellant's vehicle.

Upon a thorough review of the record, we find that the direct and circumstantial evidence in this case, and the reasonable inferences that can be drawn therefrom, was more than sufficient to establish appellant's identity as the perpetrator of the offenses.

Appellant also contends that the state failed to produce sufficient evidence to show that appellant purposely killed Tina. However, the number and nature of Tina's stab wounds clearly established appellant's purpose to kill. Further, the jury could have reasonably concluded that appellant had the mental capacity to form a purpose to kill Tina despite what appellant may have had to drink or smoke on the night in question.

Additionally, appellant suggests that the evidence was insufficient to support a finding of attempted rape. We disagree. Appellant's sexual interest in Tina was apparent. The evidence indicated that appellant desperately wanted to be alone with Tina. Tina was found with her pants at her ankles and her panties at midthigh. The evidence indicated that Tina had been forcibly undressed. The killer had apparently raked his fingers over Tina's stomach and downward toward the pubic region. Bloody hand marks were found on Tina's thighs, indicating that the killer had tried to force Tina's legs apart. Appellant's blood was found on Tina's body and clothing. A drop of appellant's blood had apparently dripped onto Tina's face while she was still alive, and while appellant was standing directly above her. This evidence was clearly sufficient for a reasonable jury to conclude that appellant attempted to rape Tina.

Accordingly, we reject appellant's thirty-fifth proposition of law.

                         VIII
Having considered appellant's propositions of law, we must now review the death sentence for appropriateness (also raised in appellant's ninth proposition of law) and proportionality. Appellant stabbed Tina to death during the commission of a kidnapping and an attempted rape. Again, we find that the aggravating circumstances for which appellant was found guilty (both of which are set forth in R.C. 2929.04[A][7]) were proven beyond a reasonable doubt.

In mitigation, appellant offered some evidence on the mitigating factor that he lacked a substantial capacity to conform his conduct to the requirements of the law because of a mental disease or defect. Dr. Henry Leland, a psychologist who examined appellant, testified that appellant has an "[o]rganically caused psychosis with an atypical or mixed

organic brain syndrome associated with opioid dependency and a severe personality disorder."  Leland concluded that appellant had an organic brain disorder and severe personality disorder exacerbated by years of alcohol and drug abuse.  Leland testified that appellant has difficulty making moral decisions and cannot distinguish between fact and fantasy.

However, on cross-examination, Leland admitted that he had not reviewed all of appellant's institutional or medical records and had not given appellant the most sophisticated psychological diagnostic tests.  Further, appellant was not given a magnetic resonance imaging test, which would have been helpful in determining whether appellant suffered from organic brain damage.  Additionally, Leland admitted that he does not use the standard American Psychiatric Association Diagnostic Manual in his diagnoses.

We find that appellant failed to establish the existence of the mitigating factor that he lacked a substantial capacity to conform his conduct to the requirements of the law due to a mental disease or defect.  See R.C. 2929.04(B)(3).  We find no credible evidence that appellant suffered from organic brain damage.  However, we assign Leland's testimony concerning appellant's history and background some weight in mitigation.

During the mitigation hearing, Patricia A. Southward testified that she had been a school psychologist while appellant attended grade school.  Southward testified that while in grade school, appellant had suffered from a learning disability and behavioral problems.  Paula Richmond, a certified teacher for learning-disabled children, testified that appellant progressed remarkably in the fifth and sixth grades while he received specialized, intensive instruction.  During this period, appellant learned to control his behavior despite a learning disability.  We assign this evidence little or no weight in mitigation.

Appellant also presented evidence that he had suffered a broken leg and other injuries in 1982 while working as a narcotics informant with the Circleville Police Department.  Thereafter, appellant continued to suffer from medical problems associated with his injuries.  In September 1988, appellant's left leg was surgically amputated above the knee.  Apparently, the amputation was necessitated, in part, by appellant's failure to follow the medical advice of his doctors.  We assign these matters little or no weight in mitigation.

Appellant also made an unsworn statement in which he expressed sympathy for Tina's family.  In his unsworn statement, appellant claimed that he had worked for several law enforcement agencies throughout the state.  Appellant claimed that he has helped others cope with amputations.  Appellant requested that the jury spare his life.  We assign these matters very little weight in mitigation.

Appellant claims that this court should also consider "residual doubt" and "the participation of others in the crime," as additional mitigating factors.  However, we have no doubt of appellant's guilt, and no credible evidence exists to implicate anyone but appellant in the aggravated murder of Tina.  Thus, we find that these matters are entitled to no weight in mitigation.

Weighing the aggravating circumstances against the

evidence presented in mitigation, we find that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt.

As our final task, we have undertaken a comparison of the sentence in this case to those in which we have previously imposed the death penalty. We have upheld the death penalty in cases involving kidnapping-murder (see, e.g., State v. Brewer [1990], 48 Ohio St.3d 50, 549 N.E.2d 491; State v. Seiber [1990], 56 Ohio St.3d 4, 564 N.E.2d 408; State v. Jells [1990], 53 Ohio St.3d 22, 559 N.E.2d 464; and State v. Morales [1987], 32 Ohio St.3d 252, 513 N.E.2d 267) and in cases involving murder during the commission of an attempted rape (see, e.g., State v. Powell [1990], 49 Ohio St.3d 255, 552 N.E.2d 191). Appellant's death sentence is neither excessive nor disproportionate.

Accordingly, the judgment of the court of appeals is affirmed.

Judgment affirmed.

Moyer, C.J., A.W. Sweeney, Resnick, F.E. Sweeney and Pfeifer, JJ., concur.

Wright, J., concurs.

FOOTNOTES:

1    Crim.R. 16(B)(1)(a) provides:

"Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any of the following which are available to, or within the possession, custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney:

"(i)  Relevant written or recorded statements made by the defendant or co-defendant, or copies thereof;

"(ii)  Written summaries of any oral statement, or copies thereof, made by the defendant or co-defendant to a prosecuting attorney or any law enforcement officer;

"(iii)  Recorded testimony of the defendant or co-defendant before a grand jury."

2    Crim.R. 16(B)(1)(g) provides that:

"Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.

"If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.

"If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.

"Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal."

APPENDIX

"Proposition of Law No. I[:]  Appellant Scudder was denied

his right to a fair trial, effective assistance of counsel, equal protection, and due process by the state's improper introduction of surprise evidence in violation of the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution, Article I, Sections 2, 5, 9, 10 and 16 of the Ohio Constitution and Criminal Rule 16.

"Proposition of Law No. II[:]  Appellant was denied the right to his defense and to a reliable sentencing determination when the state was permitted to withhold discovery but also exonerate alternative suspects, in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 16 of the Ohio Constitution.

"Proposition of Law No. III[:]  The state's instruction to at least one witness not to talk to the defense team violated appellant Scudder's right to effectively prepare for his capital trial in violation of the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments of the United States Constitution, Article I, Sections 1, 2, 5, 9, 10, 16 and 20 of the Ohio Constitution and Criminal Rule 16(B)(1)(e).

"Proposition of Law No. IV[:]  The prosecutor's comments on appellant's failure to call witnesses, to explain, or otherwise rebut the state's case violated appellant's right to remain silent and to be presumed innocent in violation of the Fifth and Fourteenth Amendment[s] to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

"Proposition of Law No. V[:]  Appellant Scudder was prejudiced by the admission of evidence obtained from illegal searches and seizures in violation of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 10, 14 and 16 of the Ohio Constitution.

"Proposition of Law No. VI[:]  The state elicited the testimony of Dr. Androw concerning a privileged x-ray interfering with appellant Scudder's substantive right of a patient-physician privilege in violation of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, Ohio Revised Code Section 2317.02(B) and Article I, Sections 2, 9 and 14 of the Ohio Constitution.

"Proposition of Law No. VII[:]  Appellant Scudder's tape-recorded statement to Robert Muncy was involuntary and inadmissible under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9 and 16 of the Ohio Constitution.

"Proposition of Law No. VIII[:]  An appellate court not having the entire record cannot adequately review the case pursuant to Ohio Rev. Code Ann. Section 2929.05 and 2929.03(G) and the capital defendant is deprived of his rights to effective assistance of counsel, equal protection, due process of law and meaningful appellate review under the Eighth and Fourteenth Amendments of the United States Constitution and Article I, Sections 2, 10 and 16 of the Ohio Constitution.

"Proposition of Law No. IX[:]  The death sentence imposed on appellant Scudder is unreliable, inappropriate and violates the Eighth and Fourteenth Amendments to the United States Constitution, Article I, Sections 9 and 16 of the Ohio Constitution and O.R.C. Section 2929.05.

"Proposition of Law No. X[:]  A capital defendant's death sentence is unreliable and inappropriate when he is denied the procedural safeguard of a meaningful, independent review by the trial court and the appellate court under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution, Article I, Sections 9 and 16 of the Ohio Constitution, O.R.C. Sections 2929.03(F) and 2929.05.

"Proposition of Law No. XI[:]  The jury's and trial court's consideration of duplicative murder counts and aggravating circumstances tipped the weighing process against appellant Scudder, destroyed the reliability of the sentencing process and resulted in the arbitrary and capricious imposition of the death sentence in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9 and 16 of the Ohio Constitution.

"Proposition of Law No. XII[:]  Misconduct by the government's attorney during voir dire in appellant Scudder's trial, deprived him of his rights to due process, a fair trial and a fair and reliable determination of his guilt and sentence as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

"Proposition of Law No. XIII[:]  Appellant Scudder was denied his rights to a fair trial and due process by prosecutorial misconduct during the guilt phase of his trial in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 9, 10 and 16 of the Ohio Constitution.

"Proposition of Law No. XIV[:]  Substantial prosecutorial misconduct at the penalty phase violated appellant's rights to due process, and a fair and reliable sentence in violation of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9 and 16 of the Ohio Constitution.

"Proposition of Law No. XV[:]  Appellant's jury was precluded from considering relevant, unrebutted mitigation evidence due to court-sanctioned prosecutorial misconduct in the form of attacks on the key mitigation witness, in violation of the Sixth, Eighth and Fourteenth Amendment[s] to the United States [Constitution] and Article I, Sections 9 and 10 of the Ohio Constitution.

"Proposition of Law No. XVI[:]  Prosecutorial evidence and argument on irrelevant and unproven other acts violates Ohio R. Evid. 404(B), O.R.C. Section 2945.59 and denies the capital defendant his rights to due process of law, a fair trial and trial by an impartial jury as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 5, 9, 10, 16 of the Ohio Constitution.

"Proposition of Law No. XVII[:]  The admission of hearsay evidence violated appellant's right to confront witnesses and to due process under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.

"Proposition of Law No. XVIII[:]  The trial court's numerous errors and omissions regarding the penalty phase jury instructions violated appellant Scudder's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Section[s] 9, 10 and 16 of

the Ohio Constitution.

"Proposition of Law No. XIX[:]  The trial court erred to the prejudice of appellant Scudder by giving erroneous instructions of law at the culpability phase of his capital trial.

"Proposition of Law No. XX[:]  The statements and service of biased jurors on the jury in Mr. Scudder's case violated his right to trial by a fair and impartial jury and to due process as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, Ohio Rev. Code Ann. Section [2]945.25(B), (O) (Anderson 1988) and Ohio R. Crim. P. 24(B)(9), (14) and Article I, Sections 10 and 16 of the Ohio Constitution.

"Proposition of Law No. XXI[:]  The Eighth and Fourteenth Amendments to the United States Constitution; Article I, Sections 9 and 16 of the Ohio Constitution and Section 2945.25(C) of the Ohio Revised Code guarantee an accused a fair trial and impartial jury.  The trial court's exclusion of potential jurors Vierling, Winters and Barnum denied appellant these constitutional guarantees.

"Proposition of Law No. XXII[:]  The trial court erred in denying Mr. Scudder's motion for mistrial based upon contamination of the jury panel during voir dire in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution, Article I, Sections 5 and 16 of the Ohio Constitution.

"Proposition of Law No. XXIII[:]  The trial court erroneously excluded a statement made by Kevin Scudder to the Columbus police concerning the crime in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9 and 16 of the Ohio Constitution.

"Proposition of Law No. XXIV[:]  The trial court improperly refused to allow defense counsel to inspect prior out-of-court statements made by the state's witnesses to police officers and failed to preserve the statements at issue for purposes of appeal yet made available to the state defense informational summaries and an expert's file in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, Article I, Section 10 of the Ohio Constitution; and Ohio Criminal Rule 16(B)(1)(g).

"Proposition of Law No. XXV[:]  Appellant Scudder has been unfairly prejudiced for the reason that materials not admitted into evidence were submitted to the jury that revealed that appellant was a prior convict and may have been involved in a rape in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 9, 10 and 16 and Article II, Section 26 of the Ohio Constitution.

"Proposition of Law No. XXVI[:]  The trial court erred by allowing the admission of a model knife into evidence in derogation of Mr. Scudder's rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 9, 10 and 16 and Article II, Section 26 of the Ohio Constitution.

"Proposition of Law No. XXVII[:]  It is a violation of the right to due process, fair trial under the Fifth, Sixth and

Fourteenth Amendments to the United States Constitution, Article I, Section 16 of the Ohio Constitution, and Rule 401, 402, 403 and 702 of the Ohio Rules of Evidence to admit DNA evidence.

"Proposition of Law No. XXVIII[:]  The trial court erred in allowing opinion evidence on the subject of 'blood spatter analysis' by a state's witness when the witness' analysis fell below the standards of the profession thereby violating Kevin Scudder's Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments rights of [sic] the United States Constitution and Article I, Sections 1, 10 and 16 of the Ohio Constitutions [sic].

"Proposition of Law No. XXIX[:]  The trial court violated appellant's fundamental right to the assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when it failed to make sufficient inquiry into the reasons for appellant's request for substitute counsel and to determine whether they were arbitrary or legitimate.

"Proposition of Law No. XXX[:]  The Fifth, Eighth and Fourteenth Amendments to the United States Constitution, Article I, Sections 10 and 16 of the Ohio Constitution and Ohio Rev. Code Ann. Section 2929.05 (Anderson 1988) guarantee a convicted capital defendant a meaningful proportionality review of his death sentence with similar cases.

"Proposition of Law No. XXXI[:]  The ineffective assistance of counsel provided to appellant Scudder violated his rights to a fair and impartial jury trial and sentence, as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 5, 9, 10 and 16 of the Ohio Constitution.

"Proposition of Law No. XXXII[:]  Appellant Scudder was denied the effective assistance of appellate counsel in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 16 of the Ohio Constitution.

"Proposition of Law No. XXXIII[:]  The ineffective assistance of counsel provided to appellant Scudder during the mitigation phase violated his rights to a fair and impartial jury trial and sentence, as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 5, 9, 10 and 16 of the Ohio Constitution.

"Proposition of Law No. XXXIV[:]  The state denied appellant Scudder his right to a speedy trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution, Article I, Section 10 of the Ohio Constitution and Ohio Revised Code Section 2945.401.

"Proposition of Law No. XXXV[:]  The state failed to introduce sufficient evidence to prove appellant's guilt beyond a reasonable doubt.  Appellant Scudder was deprived of his right to due process of law under the state and federal constitutions.

"Proposition of Law No. XXXVI[:]  The trial court violated Mr. Scudder's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 2 and 10 of the Ohio Constitution, when it improperly denied appellant's motion that would permit him to

ex parte request funding for experts and investigators.

"Proposition of Law No. XXXVII[:]  Admission at the guilt phase of irrelevant evidence concerning the victim to arouse the sympathy of the jury violated appellant's rights under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution, Article I, Sections 5 and 10 of the Ohio Constitution.

"Proposition of Law No. XXXVIII[:]  Kevin Scudder was denied his Sixth, Eighth and Fourteenth Amendment rights to a fair trial, due process and a reliable determination of his guilt and sentence when gruesome, prejudicial and cumulative photographs were admitted into evidence even though their prejudicial effect outweighed their probative value.

"Proposition of Law No. XXXIX[:]  The prosecutor's and defense counsel's comments and the court's instructions to the jury that the sentencing verdict was only a 'recommendation' diminished the jury's responsibility for its verdict and undermined the reliability of the death verdict in violation of the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 5, 9, 10 and 16 of the Ohio Constitution.

"Proposition of Law No. XL[:]  The Fifth, Eighth and Fourteenth Amendments to the United States Constitution, Article I, Sections 10 and 16 of the Ohio Constitution and Ohio Rev. Code Ann. Section 2929.05 guarantee a convicted capital defendant a fair and impartial review of his death sentence. The statutorily mandated proportionality process in Ohio is fatally flawed thereby denying Kevin Scudder the above rights.

"Proposition of Law No. XLI[:]  A death sentence based on commission of a felony murder, when the aggravating circumstance merely duplicates an element of felony murder, violates the Eighth and Fourteenth Amendments of the United States Constitution and Article I, Sections 2, 9 and 16 of the Ohio Constitution.

"Proposition of Law No. XLII[:]  The Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 9, 10 and 16 of the Ohio Constitution establish the requirements for a valid death penalty scheme. Ohio's statutory provisions governing the imposition of the death penalty, contained in Ohio Rev. Code Ann. Sections 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04 and 2929.05, (Anderson 1988), do not meet the prescribed requirements and thus are unconstitutional, both on their face and as applied to appellant Scudder.

"Proposition of Law No. XLIII[:]  Appellant Scudder was prejudiced by the state's failure to record the grand jury proceedings thereby violating the Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 2 and 10 of the Ohio Constitution.

"Proposition of Law No. XLIV[:]  The court of appeals denied Mr. Scudder his constitutional right to appellate review when Judge Deshler failed to recuse himself from the appellate panel in violation of his [sic] Sixth, Eighth and Fourteenth Amendments of the United States Constitution, Article I, Sections 2, 9 and 10 of the Ohio Constitution, Canon 3C(1) of Ohio's Code of Judicial Conduct and Canon 3C of the Judicial Canons.

"Proposition of Law No. XLV[:]  A capital defendant's constitutional rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the federal constitution and Article I, Sections 2, 9, 10 and 16 of the Ohio Constitution are violated when the trial court refuses to instruct the jury that it can consider mercy in its sentencing decision.

"Proposition of Law No. XLVI[:]  The Fourteenth Amendment to the United States Constitution; Article I, Section 16 of the Ohio Constitution; and Ohio Rev. Code Ann. Section 2929.05 (Anderson 1988) require that the trial court keep a complete and full transcript of all proceedings occurring in the trial court.  The trial court's failure to maintain such a record during the trial denied appellant his rights as guaranteed by the Ohio Revised Code, the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 9, 10 and 16 of the Ohio Constitution.

"Proposition of Law No. XLVII[:]  The trial court erred when it overruled Mr. Scudder's motion for new trial, in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, 10 and 16 of the Ohio Constitution, and Ohio Criminal Rule 33(B)."

Wright, J., concurring.   In concur in all portions of the majority opinion save the discussion under Part III.  I believe that the appellant's propositions of law discussed in that Part are valid, but constitute harmless error beyond a reasonable doubt.