DECISION. The defendant-appellant, Betty Jo Davidson, brings this appeal from the judgment entered and the sentence imposed pursuant to the verdict of a jury finding her guilty of the charge of assault, drawn in accordance with R.C. 2903.13(A). The substance of the charge was that during the late evening hours of February 18, 2000, Davidson knowingly caused physical harm to Aaron Robinson by repeatedly stabbing and cutting him on his lower body, arms, and face with a knife. In his opening statement to the jury, defense counsel admitted that Davidson had used a knife to cut Robinson, with whom she had had a relationship, both casual and sexually intimate, extending over a period of years, but asserted that she had done so in defense of herself.
Davidson is represented in her appeal by counsel other than her trial counsel, and has submitted four assignments of error.[1] The first and second raise, respectively, the questions of whether the evidence adduced by the prosecution was sufficient to sustain the conviction as a matter of law, and whether the verdict was so contrary to the manifest weight of the evidence as to create a miscarriage of justice.
The facts upon which the charge of assault was predicated are, in major part, undisputed. At about 9:30 on the evening of February 18, 2001, Officer Charles Neeley of the Cincinnati Police Division was on routine patrol on the thirty-second block of Eastern Avenue within the city when he saw Davidson, in an intoxicated condition, "yelling at people as they were walking down the street." Officer Neeley advised Davidson to "start heading home," but when he returned to the area shortly after giving that advice, Davidson was still on the street in the company of another woman. He asked Davidson's companion "to make sure [Davidson] got home safely," and told Davidson to "please [not] let [him] see [her] out here for a third time * * * or she would go to jail for disorderly conduct while intoxicated." At about 11:00 p.m., Officer Neeley was dispatched for "a weapon run * * * a person cut * * * and the address was 3227 Eastern Avenue." He and a fellow officer found a man, subsequently identified as Aaron Robinson, bleeding from "several lacerations on his body." Specifically, he saw wounds on Robinson's lower torso in the abdominal area, two on his forearm, and some on his face. An unidentified person had applied a makeshift bandage to Robinson's arm that, when removed by Cincinnati fire department paramedics, revealed wounds so deep as to have penetrated, in Neeley's words, "the fatty layer." Robinson, who was "highly intoxicated," was taken to a hospital, where, along with other treatment, his wounds were sutured. He named Davidson as his assailant.
Davidson's version of the night's events was that, as she had been making her way home, as ordered by Neeley, she had seen Robinson outside of his apartment, which was located "two houses down" from where she lived. Her acquaintanceship with Robinson began in 1995 as "boyfriend and girlfriend." In March 1997, he "beat her badly" with a ball-peen hammer, as a consequence of which he was imprisoned for a year upon his plea of no contest to a charge of felonious assault. Davidson also testified to another instance when Robinson had thrown a claw hammer at her back, which had missed her and "stuck into the wall," and another instance when he had "hit [her] in the face with a shovel." All of this had occurred while the two were "living together" and despite her knowledge that Robinson had "a reputation for violence" and "was pretty much unsafe * * * and unpredictable as to what he [was] going to do at any time."
Davidson testified that, when she had passed Robinson on the evening of February 18, he had invited her to "have a couple of beers" in his apartment. Once inside, they drank beer and smoked marijuana. But when she attempted to leave, Robinson blocked the doorway so that she could not get out and told her that "she wasn't going nowhere." She shoved him, and he seized her by the hair, started punching her, and then pulled her into the kitchen, where he "kneed [her] in [her] face," causing her nose to swell immediately. At that point, Davidson stated, she seized a knife, "cut him once and [when] he didn't let me go cut him again." Then, she "freaked out," fled from the scene, and went to the house of a female friend, but she refused to report the incident to police or to receive medical attention.
According to Officer Neeley's testimony, fresh blood was found throughout Robinson's apartment. Robinson was "highly excited * * * upset * * * and panicky," and he stated, in response to a direct inquiry, that Davidson was the person who had wounded him.
Some ten days later, Neeley came into contact with Davidson at the Hamilton County Justice Center, where she had been taken by another officer from Neeley's district who had arrested Davidson on the warrant issued on February 19 for the assault on Robinson. Neeley testified that, after the arresting officer had assured him that Davidson had received "the advice of rights," he asked her, "Betty Jo, why did you do it, why did you stab him?" Davidson responded, "After what he did to me, he deserved it." At that time, Neeley testified, she did not tell him that a "physical altercation" had preceded the assault, nor could he see bruises or other injuries on Davidson's person.
When she testified at trial, Davidson said that, by the time of her arrest and the encounter with Neeley, she had had "plenty of time to heal," although she had received no medical treatment after the February 18 incident. Her statement to Neeley that Robinson had "deserved it" referred to Robinson's assault upon her in 1997, when, according to her, Robinson had almost killed her.
It is manifest from the record that the salient issue in this case is whether, when she stabbed and cut Robinson, Davidson was acting in self-defense. We are convinced that the trial court did not err in overruling Davidson's Crim.R. 29 motions for acquittal, made after the prosecution had rested its case-in-chief and after all the evidence had been adduced. The syllabus of State v. Eley (1978), 56 Ohio St.2d 169,383 N.E.2d 132 is as follows:
 A reviewing court will not reverse a jury verdict when there is substantial evidence upon which a jury could reasonably conclude that all elements of an offense have been proven beyond a reasonable doubt.
 The tenor of the syllabus is found in the body of Justice Celebrezze's opinion:
 [I]n considering an assignment of error in a criminal case which attacks the sufficiency of evidence, a certain perspective is required. * * * Our review is * * * confined to a determination of whether there was substantial evidence.
 Id. at 172, 383 N.E.2d at 134 (citations omitted).
 Without question, the evidence in this case was substantial and, if unrebutted or not otherwise denigrated, was sufficient to prove all elements of the assault charged beyond a reasonable doubt. The first assignment is, therefore, overruled upon the authority of Eley and the host of cases that have uniformly applied its rule.
It is a given that on the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. See State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212. In her appeal, Davidson concedes that this principle applies to her case, but submits that the jury lost its way when resolving the conflicts in the evidence, because her testimony, coupled with that of the friend to whose home she had fled after stabbing and cutting Robinson, made it clear that she had not been the aggressor and had acted only to defend herself.
Davidson insists that Robinson's past assaults upon her made his testimony that she had attacked him "simply not believable." We cannot agree. The jury was left, after the submission of all the evidence, with a clear choice of whether to believe Davidson's version of the events or to accept those of the witnesses for the prosecution, together with inferences properly drawn, especially the characterization of the wounds to Robinson's forearms as "defensive." The issues were submitted to the jury with instructions that were correct in law, unchallenged here, and appropriate to the case. The record convinces us that the jury made its choice in reliance upon substantial, probative evidence, and that it did not lose its way or otherwise create a miscarriage of justice. Resultantly, the second assignment must be, and is, overruled.
The third assignment of error is that Davidson was not afforded the effective assistance of trial counsel, because counsel failed to file a motion to suppress the utterances Davidson made when Officer Neeley had asked her, "[W]hy did you do it * * * ?"
After Neeley testified that Davidson had said, "[H]e deserved it," the prosecutor attempted to elicit from him a further explanation of what Davidson had "meant" when she made the statement. When Neeley responded that Davidson had "referred to the incident where he was subsequently convicted on [sic] felonious assault," defense counsel immediately interposed an objection. The court retired to chambers with defense counsel and the prosecutor to discuss the legal issues broached by the objection.
Initially, defense counsel predicated the objection on the failure of the prosecutor to provide Davidson's statement in response to a demand for discovery and notice of evidence filed and served on the prosecution on March 16, 2000. The response to that demand was filed May 17, 2000, and declared in pertinent part as follows:
Defendant's statements:
None known to the prosecutor as of May 5, 2000.
 Counsel said the defense was not claiming surprise or relying on a possible lack of adequate Miranda
warnings, because "it was a simple statement." He suggested that they "ought to stop with what's in and just keep the trial going."
Then the court brought Officer Neeley into the conference to determine what Neeley might say if questioned further about Davidson's statements. Neeley said that Davidson's utterance that "he had it coming" was "the extent of it." After being advised by defense counsel that the objection pertained to possible additional testimony as a product of custodial interrogation, rather than the already-given testimony, the court admonished the prosecutor to limit the questions to "what he said and she said." The only significant addition to the exchange between Neeley and Davidson was that Davidson had "relayed to [Neeley] that [Robinson had] nearly killed her with a ball-peen hammer a few years earlier, and that he should know that."
Defense counsel had made clear to the jury in his opening statement that the case pivoted on whether "the sum of the evidence" would enable the jury to "find what Betty [had done] was in defense of herself to prevent further personal injury." Davidson's testimony of what she had done and why she had acted to defend herself presented that defense in graphic detail. Her statement to Officer Neeley did not necessarily contradict her candid admissions of the extent of the stabbing and cutting she felt compelled to inflict to extricate herself from further physical harm or possible death at the hands of a man who had "nearly killed her * * * a few years earlier." The added reference to what Robinson had deserved for the brutal assault upon her in 1997 could logically and reasonably have been discounted by the jury in its deliberations when determining whether Davidson's defense had been proven by a preponderance of the evidence. The issue was not clouded. It was clear. The instruction on the subject posed the question accurately. In our estimate, the decision of Davidson's trial counsel to go on with the case demonstrated appropriate trial strategy, when considered in light of the totality of circumstances in this case, and was not violative of an essential duty owed to Davidson or prejudicial to the outcome of her trial. Accordingly, the third assignment is without merit and is overruled.
The fourth assignment is that the court erred when it allowed the prosecutor to adduce evidence in the form of statements attributed to Davidson that had not been provided in discovery. The disputed statements were those related by Officer Neeley when he questioned Davidson after he had chanced upon her outside the justice center some ten days after the alleged assault upon Robinson. In support of this proposition, Davidson submits that the use of the statements violated Crim.R. 16 and prejudiced her because the statements "devastated her defense strategy."
The case to which Davidson cites us, State v. Scudder (1994),71 Ohio St.3d 263, 643 N.E.2d 524, is one in which the Ohio Supreme Court reviewed a conviction for capital murder. The first proposition of law was that the appellant had been denied a fair trial because the prosecutor had violated the rules of discovery by failing to notify the appellant that the prosecution proposed to present testimony from experts. The court noted that Crim.R. 16(E)(3) permits a trial court to exercise discretion in determining an appropriate sanction for a discovery violation. Accordingly, the standard of review in the context of this case is that of abuse of discretion.
Officer Neeley's testimony relating what "he said and she said" outside the justice center was discussed in detail with counsel, on the record, in chambers. That colloquy came on the heels of a lengthy discussion of the proposed instructions on self-defense, which itself followed the discussion set forth in our disposition of the third assignment. After indicating to counsel that the court had already ruled on the admissibility of Officer Neeley's testimony, the court addressed itself to defense counsel:
 Quite frankly, I have to say to you that I don't know if what she alleged to have said really damages your case at all. In fact, it helps to establish her state of mind in terms of being afraid of the victim.
 At that point, defense counsel moved to strike Officer Neeley's testimony relating to Davidson's responses. The court overruled the motion, after remarking that it was tardy, but noted counsel's objection.
The totality of the circumstances demonstrated within the record convinces us that Davidson was not prejudiced when the disputed statements are gauged by the standard set forth in Scudder. As we see it, the court acted reasonably in letting Neeley's testimony stand as it had been limited and did not abuse its discretion in refusing to sanction the prosecution further. Therefore, the fourth assignment of error is overruled.
We note, further, that the trial court extended a marked degree of leniency in its sentence upon Davidson. First, it referred the case to its adult probation department for an evaluation of Davidson's eligibility for "drug and/or alcohol treatment" to meet a painfully obvious need. That was done immediately after the return of the verdict on May 17, 2000. When Davidson reappeared before the court on June 14, 2000, the court suspended all days of confinement, placed her on probation for two years, and waived "fees." Further, the court noted that Davidson was in "First Step," a program designed to rehabilitate those who abuse alcohol or drugs, and the probation department was instructed to monitor her progress closely.
The judgment of the Hamilton County Municipal Court is affirmed.
Doan, P.J., Painter and Shannon, JJ.
Raymond E. Shannon, retired from the First Appellate District, sitting by assignment.
[1] For reasons not apparent from the record, the prosecution has elected not to file a responsive brief and, accordingly, has not been permitted to argue. See App.R. 18(C).