Appellant, Steven M. Lute, appeals his convictions for aggravated burglary and attempted rape. We affirm.
 I.
Mr. Lute and Melissa Oleksa lived in the same trailer park in Lorain County, Ohio. Ms. Oleksa testified that in the early morning of January 24, 1999, she was asleep in her mobile home and woke to the sound of her home security system beeping. She crawled to the foot of her bed, looked down the hallway, and saw Mr. Lute coming toward her. She recognized Mr. Lute from his physical build and voice. Formerly, they had been friends, but had stopped associating with one another over a year earlier. As Mr. Lute was approaching, Ms. Oleksa began screaming and retreated to the middle of her bed. She testified that she asked him what he wanted and that he responded, "You know what I want, bitch, and if you don't give it to me, I'll kill you." He then grabbed her by her ankles, pulled her to the foot of her bed, and repeatedly tried to spread her legs apart. Ms. Oleksa related that she struggled vigorously and that Mr. Lute left after a couple of minutes. Immediately thereafter, she disengaged her alarm system and called 911. John Mowry, the Director of Lorain County 911, testified that they received a 911 call from Ms. Oleksa's address at approximately 6:30 a.m. The 911 tape was played for the jury and admitted into evidence. On the 911 tape, Ms. Oleksa identified Mr. Lute as her attacker by name.
On cross-examination, Ms. Oleksa recounted how she was close friends with Mr. Lute and his family and took showers at their trailer daily because of plumbing problems in her own trailer. She admitted that she used to smoke marijuana and use cocaine. She also testified that her relationship with the Lute family soured because she had accused Mr. Lute of breaking into her trailer and stealing her stereo and marijuana.
Officer Dan Smith of the City of Lorain Police Department was dispatched to Ms. Oleksa's residence. Officer Smith testified that the door to Ms. Oleksa's trailer had been kicked in, the padded bed rails of her waterbed had been knocked off, and the bedding was laying on the floor. He also stated that Ms. Oleksa told him that Mr. Lute was her attacker and gave a physical description of him. Subsequently, Lieutenant Poli of the City of Lorain Police Department, Detective Bureau commenced an investigation of the incident. Lieutenant Poli testified about his investigation and stated that a witness had told him that he or she had seen Mr. Lute leave a trailer at approximately 6:00 a.m. and return at approximately a half hour later.
The defense presented the testimony of Robin Lute, Mr. Lute's mother, who testified as to the relationship between the Lute family and Ms. Oleksa, and the decision of Lute family to terminate their relationship with her because she had accused Mr. Lute of stealing certain items from her trailer. Similarly, Bob Kilzer, a mutual friend of Mr. Lute and Ms. Oleksa, testified that Ms. Oleksa accused Mr. Lute of stealing her stereo from her trailer in Fall 1997 and that in 1997, she said that she was out to get Mr. Lute. Doris Singer and Richard Vasu, neighbors of Ms. Oleksa, testified that they did not hear any screaming or security alarm siren on the morning of January 24, 1999; however, Thomas McNulty, a service manager for ADT Security, testified that Ms. Oleksa's security system had an indoor siren and not an outdoor siren, and that therefore, it was not surprising that Ms. Oleksa's neighbors could not hear it.
Rhonda Napier, the wife of Mr. Lute's best friend, acted as Mr. Lute's alibi witness. She testified that Mr. Lute was with her in her trailer at the time of the crime and that she had to wake him up when his mother called him at approximately 6:40 a.m. However, on cross-examination, Ms. Napier testified that although she knew the crime had been committed at approximately 6:30 a.m., she never called the police or the prosecutor's office to tell them that Mr. Lute was with her at that time and that they had made a mistake. Moreover, she stated that she approached defense counsel as an alibi witness at the behest of Mr. Lute's parents.
Mr. Lute testified on his own behalf and confirmed Ms. Napier's account of what happened on the morning of January 24, 1999, stating that he never left the Napier trailer after approximately 4:00 a.m. He also recounted how his friendship with Ms. Oleksa deteriorated in 1997 because she accused him of stealing her stereo, which he denied doing. Mr. Lute then testified that after being told by his mother that the police were looking for him, he sat on the couch and wondered why the police were looking for him. A few hours later, the police arrested him.
On rebuttal, the prosecution called Deputy John Shreve, who testified that while he transported Mr. Lute between the courthouse and the jail, Mr. Lute asked him his opinion as to how he trial was going. Deputy Shreve told him that he did not think it was going too well for Mr. Lute because Lieutenant Poli had testified that he had a witness who saw Mr. Lute leave a trailer at 6:00 a.m. and return approximately a half hour later. Deputy Shreve testified that in response, Mr. Lute admitted leaving the Napier trailer to go to his mother's house, but stated that he returned shortly thereafter because the door to his mother's trailer was locked. On surrebuttal, Mr. Lute acknowledged asking Deputy Shreve about the trial, but denied telling Deputy Shreve that he left the Napier trailer at approximately 6:00 a.m.
On March 3, 1999, the Lorain County Court of Common Pleas indicted Mr. Lute on one count of aggravated burglary, in violation of R.C.2911.11(A)(1), and one count of attempted rape, in violation of R.C.2923.02(A) and 2907.02. A jury trial was held, commencing on August 4, 1999. In a verdict journalized on August 10, 1999, the jury found Mr. Lute guilty of the charges contained in the indictment. Mr. Lute was sentenced to nine years in prison for aggravated burglary and seven years in prison for attempted rape. These sentences were to be served concurrently. This appeal followed.
 II.
Mr. Lute asserts fourteen assignments of error. We will discuss each in due course, consolidating the tenth and eleventh assignments of error to facilitate review.
 A.
First Assignment of Error
 DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN EVIDENCE CONCERNING THE FAILURE OF DEFENDANT TO MAKE A STATEMENT WAS OFFERED.
In his first assignment of error, Mr. Lute argues that the prosecutor made an improper comment on his post-Miranda silence, and therefore, his right to due process of law was violated. He specifically complains about the following exchange between the prosecutor and Lieutenant Robert Poli of the City of Lorain Police Department:
 PROSECUTOR: Could you tell the ladies and gentlemen of the Jury what comprised your investigation in this?
 WITNESS: First of all, when I got to the police department I was notified who the victim was, where she lived and also the fact that a suspect had been arrested and was presently at the time incarcerated in our jail. From the police station I went to the victim's house and talked to her, got as much information as I could and then checked the area, see if there was any type of evidence that was usable. Went back to the department and brought the suspect down into the Detective Bureau, advised him of his rights, asked him if he wanted to talk to me, and that was refused. Later, I learned that there might have been—
DEFENSE COUNSEL: Objection.
 THE COURT: I think you've answered her question. You can ask your next question.
PROSECUTOR: Okay.
(Emphasis added.)
In Doyle v. Ohio (1976), 426 U.S. 610, 618, 49 L.Ed.2d 91, 98, the Supreme Court stated that although "the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings." The Supreme Court has determined that "the use for impeachment purposes of [defendant's] silence, at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment." Id. at 619, 49 L.Ed.2d at 98.
In this case, the prosecutor inquired as to what constituted Lieutenant Poli's investigation. In an extensive answer, the witness mentioned that he Mirandized Mr. Lute, asked him if wanted to make a statement, and that this offer was refused by Mr. Lute. We find that this unsolicited reference to Mr. Lute's post-Miranda silence, coupled with the fact that the prosecutor immediately abandoned that line of questioning after the defense's objection and that the prosecutor did not make further reference to Mr. Lute's post-Miranda silence in her closing argument, did not constitute a continuous and invading inquiry into his post-Miranda silence, and therefore, did not create an impermissible inference of guilt in violation of his due process rights. Further, as the remaining evidence constituted overwhelming proof of Mr. Lute's guilt, we conclude that assuming arguendo that this was error, it was harmless beyond a reasonable doubt. See State v. Williams (1983), 6 Ohio St.3d 281, paragraph three of the syllabus.
Mr. Lute also asserts that a Doyle violation occurred when the prosecutor asked Rhonda Napier whether Mr. Lute argued with the police or asked the police what they wanted when they came to arrest him, and when the prosecutor cross-examined Mr. Lute as to whether he asked the police why he was being arrested after wondering for approximately five hours why the police were looking for him.[1] However, the record does not indicate that Mr. Lute received any Miranda warnings either during or immediately after his arrest during which time he remained silent, thereby triggering the implicit assurance that his silence would not be used against him.[2] See Greer v. Miller (1987), 483 U.S. 756, 763,97 L.Ed.2d 618, 629. In Fletcher v. Weir (1982), 455 U.S. 603, 607,71 L.Ed.2d 490, 494, the Supreme Court distinguished Doyle and found that "[i]n the absence of the sort of affirmative assurances embodied in the Miranda warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand." In light of Fletcher, we conclude that, as the record does not indicate that Mr. Lute received any Miranda
warnings during his arrest, it was not improper to allow the prosecutor to impeach Mr. Lute's testimony with his pre-Miranda silence. Further, even if it was error to permit these questions, we find that it does not rise to the level of plain error under Crim.R. 52(B).[3] Mr. Lute's first assignment of error is overruled.
 B.
Second Assignment of Error
 DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT PERMITTED REBUTTAL TESTIMONY FROM DEPUTY SHREVE.
In his second assignment of error, Mr. Lute argues that the trial court should not have permitted Deputy Shreve to testify as a rebuttal witness because Deputy Shreve conducted a custodial interrogation without giving him his Miranda warnings. We disagree.
"A suspect's decision to waive his Fifth Amendment privilege against compulsory self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." State v.Dailey (1990), 53 Ohio St.3d 88, paragraph two of the syllabus. Further, remarks that are not in response to any form of interrogation are fully admissible into evidence. State v. Mills (1992),62 Ohio St.3d 357, 366. In the present case, while transporting Mr. Lute from the courthouse to the Lorain County Jail, Mr. Lute asked Deputy Shreve his opinion as to how his trial was going. Deputy Shreve responded that it did not appear to be progressing favorably for Mr. Lute because Lieutenant Poli had testified that he had a witness that saw Mr. Lute leave the Napier trailer at 6:00 a.m. and not return until approximately 6:30 a.m., the time span during which the crime occurred. According to Deputy Shreve, Mr. Lute then stated that he had gone to his mother's trailer during that time, but returned to the Napier trailer shortly thereafter because the door to his mother's trailer was locked. This statement directly conflicted with Mr. Lute's testimony at trial, during which he stated that he never left the Napier trailer after approximately 4:00 a.m. on January 24, 1999. We find that Mr. Lute's self-incriminating statement was voluntary and was not precipitated by any form of police questioning or interrogation by Deputy Shreve. Mr. Lute's second assignment of error is overruled.
 C. Plain Error Analysis
When a defendant fails to call an alleged error to the attention of the trial court by objecting during trial, this court can only take notice of the error if it rises to the level of plain error. Crim.R. 52(B). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. In order for this court to apply Crim.R. 52(B), it must be clear that the outcome of the trial would have been different but for the alleged error. See State v. Lane (1995),108 Ohio App.3d 477, 482.
 1.
Third Assignment of Error
 DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE COURT MADE COMMENTS WHICH IMPUGNED THE DEFENSE PRESENTATION.
In his third assignment of error, Mr. Lute contends that he was denied a fair trial because the trial court made various comments which impugned the presentation of the defense. There are five instances that Mr. Lute argues deprived him of a fair trial.
The standard for determining whether the trial court's comments were prejudicial was set forth in State v. Wade (1978), 53 Ohio St.2d 182,188, vacated and remanded on other grounds (1978), 438 U.S. 911,57 L.Ed.2d 1157:
 (1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel.
In addition, the defendant must object to the comments, in order to give the judge an opportunity to give curative instructions. Id. The failure to object waives all but plain error. State v. Jalowiec (Apr. 15, 1998), Lorain App. No. 96CA006445, unreported, at 19-20.
In the case sub judice, Mr. Lute's counsel did not object to any of the trial court's comments. Upon considering the challenged statements in the context in which they were made, we find no plain error. See Crim.R. 52(B). However, even if Mr. Lute's counsel had objected to the trial court's comments, we find that they were neither improper nor prejudicial. Although the crime at issue occurred in 1999, defense counsel was attempting to elicit testimony regarding events which occurred in 1997 and 1998 to which Ms. Oleksa had already testified, namely her souring relationship with the Lute family and the attending accusations of theft that she made against Mr. Lute. Almost all of the trial court's comments related to the form and relevance of a question or the admissibility of extraneous testimony or evidence. Such comments did not reflect a bias on the part of the trial judge, but rather were related to the trial court's efforts to manage the trial. Furthermore, during its charge to the jury, the judge instructed the jury to disregard anything the jury considered an indication of the court's views regarding the case. Hence, we conclude that Mr. Lute was not denied a fair trial due to the trial court's comments. Appellant's third assignment of error is overruled.
 2.
Fourth Assignment of Error
DEFENDANT WAS IMPROPERLY CROSS-EXAMINED BY THE PROSECUTOR.
In his fourth assignment of error, Mr. Lute argues that the prosecutor improperly cross-examined Mr. Lute regarding the credibility of another witness, namely Deputy Shreve. We disagree.
During the defense's case-in-chief, Mr. Lute testified that he never left the Napier trailer, and thus, confirmed the testimony of his alibi witness, Rhonda Napier. On rebuttal, the State presented the testimony of Deputy Shreve, who testified that Mr. Lute had asked him for his opinion as to how the trial was progressing and that he had told Mr. Lute that it did not look to good for him because Lieutenant Poli had a witness who saw him leave the Napier trailer, during the relevant time. Deputy Shreve testified that, in response, Mr. Lute volunteered that during the time relevant to the crime being committed, he had left the Napier trailer to go to his mother's trailer, but returned shortly thereafter because his mother's trailer was locked. Subsequently, on surrebuttal, Mr. Lute acknowledged that the conversation occurred just as Deputy Shreve testified, but denied admitting to Deputy Shreve that he had left the Napier trailer to go to his mother's home.
Mr. Lute directs our attention to the following exchange during the prosecutor's cross-examination of Mr. Lute during his testimony on surrebuttal, claiming that this question amounted to reversible error, as Mr. Lute was forced to comment on the credibility of another witness's testimony:
 PROSECUTOR: So Deputy Shreve is getting up on the stand and lying about it; is that correct?
MR. LUTE: Yes, ma'am, I am saying that.
By testifying on surrebuttal that the conversation occurred just as Deputy Shreve testified, except for the portion dealing with Mr. Lute admitting that he left the Napier trailer at the time relevant to the crime, Mr. Lute opened the door to the prosecution's question as to the veracity of Deputy Shreve's testimony. Moreover, Mr. Lute suffered no prejudice as a result of this question because the jury was free to believe Mr. Lute and find that Deputy Shreve was fabricating or mistaken about their conversation. Mr. Lute's fourth assignment of error is overruled.
 3.
Ninth Assignment of Error
 DEFENDANT WAS DENIED A FAIR TRIAL BY REASON OF AN IMPROPER ARGUMENT BY THE PROSECUTOR.
In his ninth assignments of error, Mr. Lute contends that he was denied a fair trial because in closing argument, the prosecutor improperly expressed her opinion as to Mr. Lute's guilt and improperly made an appeal to the passion and prejudice of the jury. We disagree.
When reviewing allegations of prosecutorial misconduct, appellate courts must consider that "`the touchstone of due-process [sic] analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.'" State v. Hill (1996),75 Ohio St.3d 195, 203, quoting Smith v. Phillips (1982), 455 U.S. 209,219, 71 L.Ed.2d 78, 87. The Ohio Supreme Court has declared that prosecutorial misconduct is not grounds for error unless the defendant has been denied a fair trial. State v. Maurer (1984), 15 Ohio St.3d 239,266. In order to reverse a conviction based on prosecutorial misconduct, the defendant must prove that the comments were improper and that they prejudicially affected the defendant's substantial rights.State v. Smith (1984), 14 Ohio St.3d 13, 14. The Ohio Supreme Court has noted that "`[c]onsiderable latitude is permitted in closing arguments, and the question is generally considered one falling in the first instance within the sound discretion of the trial court.'" (Alteration original.) Maurer, 15 Ohio St.3d at 269, quoting State v. Pustare
(1973), 33 Ohio App.2d 305, 312. "[W]here it is apparent from the peculiar facts and circumstances of the particular case that such discretion has not been abused a reviewing court will not ordinarily interfere." Golamb v. Layton (1950), 154 Ohio St. 305, paragraph four of the syllabus.
In the present case, Mr. Lute interposed no objections to the challenged arguments made by the prosecutor during closing arguments. Where defense counsel fails to object to the prosecutor's remarks during trial, unless the remarks constitute plain error, a reviewing court need not consider whether these remarks prejudiced the defendant. State v.Strobel (1988), 51 Ohio App.3d 31, 39; see, also, State v. Lott (1990),51 Ohio St.3d 160, 167. The standard of review for plain error was set forth above.
First, Mr. Lute argues that the prosecutor improperly expressed her opinion as to Mr. Lute's guilt; however, the challenged portion of the closing argument reveals that the State merely commented upon the evidence presented at trial and what the evidence showed. Next, regarding Mr. Lute's contention that the prosecutor attempted to arouse the jury's passion and prejudice during rebuttal closing argument, we find that the prosecutor's comment was invited by the argument made by defense counsel, and as previously noted, "`[c]onsiderable latitude is permitted in closing arguments, and the question is generally considered one falling in the first instance within the sound discretion of the trial court.'" (Alteration in original.) Maurer, 15 Ohio St.3d at 269, quoting Pustare, 33 Ohio App.2d at 312. Accordingly, we find that the comments by the prosecutor did not constitute prosecutorial misconduct. Further, assuming arguendo that these comments constituted prosecutorial misconduct, we cannot conclude that the outcome of the trial would have been different but for the prosecutor's comments made during closing argument, and therefore, we cannot say that any of the comments by the prosecutor during her closing argument rose to the level of plain error. Mr. Lute's ninth assignment of error is overruled.
 D.
Fifth Assignment of Error
 DEFENDANT WAS DENIED DUE PROCESS OF LAW AND A FAIR TRIAL WHEN THE COURT PERMITTED AN INVESTIGATING DETECTIVE TO TESTIFY AS TO THE RESULTS OF HIS INVESTIGATION.
In his fifth assignment of error, Mr. Lute avers that Lieutenant Poli's testimony regarding what he was told by a witness whom he interviewed constituted inadmissible hearsay. Specifically, Lieutenant Poli testified that a witness had told him that Mr. Lute left a trailer at approximately 6:00 a.m. and returned within one-half hour. Similarly, he argues that Officer Smith's testimony regarding Ms. Oleksa's identification of Mr. Lute as her attacker constituted inadmissible hearsay. We find any error in this regard to be harmless.
Harmless error is "[a]ny error, defect, irregularity, or variance which does not affect substantial rights [and] shall be disregarded." Crim.R. 52(A). Further,
 [n]o motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court because of * * * [t]he admission or rejection of any evidence offered against or for the accused unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby[.]
R.C. 2945.83(C). Assuming that these statements are indeed inadmissible hearsay, we find that these errors are harmless. Deputy Shreve testified that Mr. Lute admitted to him that he left the Napier Trailer during the time relevant to the crime being committed, approximately 6:00 a.m. to 6:30 a.m. Similarly, Ms. Oleksa testified that Mr. Lute was her attacker and the 911 tape, which was admitted into evidence and played for the jury, recorded Ms. Oleksa naming her attacker as Mr. Lute. Accordingly, we conclude that the statements testified to by Lieutenant Poli and Officer Smith were harmless as no prejudicial evidence was obtained thereby. Mr. Lute's fifth assignment of error is overruled.
 E.
Sixth Assignment of Error
 DEFENDANT WAS DENIED HIS RIGHT TO PRESENT A DEFENSE WHEN WHEN [sic] DEFENSE WITNESSES WERE NOT PERMITTED TO TESTIFY AND CROSS-EXAMINATION WAS LIMITED.
In his sixth assignment of error, Mr. Lute avers that the trial court violated his ability to present a defense by limiting a witness's ability to testify and limiting his cross-examination of an adverse witness. We disagree.
A criminal defendant's right to confront and cross-examine a witness on relevant issues is encompassed in the Sixth Amendment to the United States Constitution. Delaware v. Van Arsdall (1986), 475 U.S. 673, 678,89 L.Ed.2d 674, 682-83. However, this right does have boundaries since the "`extent of cross-examination * * * is within the sound discretion of the trial court.'" State v. Green (1993), 66 Ohio St.3d 141, 147, quoting Alford v. United States (1931), 282 U.S. 687, 694, 75 L.Ed. 624,629. "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Van Arsdall, 475 U.S. at 679,89 L.Ed. at 683. Additionally, "[one's] constitutional right to cross-examine adverse witnesses does not authorize defense counsel to disregard sound evidentiary rules." State v. Amburgey (1987),33 Ohio St.3d 115, 117. Therefore, a criminal defendant does not have the right to cross-examine a witness on any issue that he or she may desire.
Mr. Lute asserts that he was not permitted to cross-examine Melissa Oleska on issues affecting her credibility and biases. Specifically, Mr. Lute was not permitted to inquire about the following issues during his cross-examination of Ms. Oleksa: (1) whether Ms. Oleska's husband liked Mr. Lute; (2) whether Ms. Oleska was aware of the break-ins at the trailer park during the time period when her stereo was stolen; and (3) whether Ms. Oleska knew if anyone was arrested for these break-ins. The break-ins, to which defense counsel referred, occurred over one year before the crime being tried in the instant case. From the record, it is apparent that the trial court prohibited these questions on evidentiary bases, namely, lack of personal knowledge of the witness and relevancy. See Evid.R. 403 and 602. We conclude that as these questions are barred by sound evidentiary rules, the trial court did not err in limiting Mr. Lute's cross-examination on these issues.
In addition, Mr. Lute claims that defense witness, Robin Lute, was not permitted to testify concerning the difficulties that Ms. Oleska was experiencing in 1997. However, the trial court determined that this testimony was irrelevant to the case, in that, it referred to the difficulties Ms. Oleska was experiencing years before the incident at issue occurred. After reviewing the transcript, we cannot say that the trial court erred in this determination. Therefore, Mr. Lute's sixth assignment of error is overruled.
 F.
Seventh Assignment of Error
 DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT ADMITTED INTO EVIDENCE A 911 TAPE WHICH WAS NOT DISCLOSED.
In the seventh assignment of error, Mr. Lute contends that the trial court erred in admitting into evidence a 911 tape, which the State did not disclose, as required under Crim.R. 16, until the morning of trial. We disagree.
"The purpose of the discovery rules is to prevent surprise and the secreting of evidence favorable to one party." State v. Parker (1990),53 Ohio St.3d 82, 86. "Crim.R. 16(E)(3) provides for the regulation of discovery in a criminal case and permits a trial court to exercise discretion in determining the appropriate sanction for a discovery violation." State v. Scudder (1994), 71 Ohio St.3d 263, 268. Crim.R. 16(E)(3) provides:
 If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.
"Although exclusion is an available sanction, a trial court is not required to impose that sanction." State v. Otte (1996),74 Ohio St.3d 555, 563. Further, "[t]he court does not abuse its discretion in admitting evidence undisclosed in discovery unless the record shows that the prosecutor's discovery violation was willful, that foreknowledge would have benefited the accused in preparing his defense, or that the accused was unfairly prejudiced." Id. "In addition, a trial court properly concludes that a defense counsel is prepared to cross-examine witnesses when a defense counsel fails to move for a continuance." State v. Bellomy (Apr. 8, 1998), Wayne App. No. 97CA0036, unreported, at 4.
In the present case, no evidence was presented in the record to demonstrate that the State's failure to disclose was willful. The record indicates that the State notified Mr. Lute via fax of the 911 tape and the name of an additional witness[4] on the day before trial. The trial court also offered Mr. Lute's counsel additional time to prepare cross-examination of the 911 tape if necessary; however, defense counsel proceeded with cross-examination of the witness without requesting additional time to prepare. Consequently, we cannot say that the trial court abused its discretion in admitting the 911 tape. Mr. Lute's seventh assignment of error is overruled.
 G.
Eighth Assignment of Error
 DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS CONVICTED OF ATTEMPTED RAPE ON AN INDICTMENT WHICH FAILED TO CHARGE AN OFFENSE.
In his eighth assignment of error, Mr. Lute contends that the indictment was deficient in that it failed to allege the manner in which he committed attempted rape, and therefore, was insufficient to give fair notice of the attempted rape charge. We disagree.
Pursuant to Crim.R. 7(B), an indictment "shall * * * contain a statement that the defendant has committed a public offense specified in the indictment." The indictment "may be made in ordinary and concise language[,] * * * in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged." Id. Further, "[e]ach count of the indictment or information shall state the numerical designation of the statute that the defendant is alleged to have violated." Id. "Courts cannot grant new trials based upon imperfection or inaccuracy in any indictment if the charge is sufficient to fairly and reasonably inform the defendant of the essential elements of the crime."State v. Landrum (1990), 53 Ohio St.3d 107, 119, citing Crim.R. 33(E)(1).
The instant indictment charged the defendant in pertinent part as follows:
 The Jurors of the Grand Jury, being first duly sworn, further find and present: THAT: STEVEN M. LUTE, late of said County, on or about January 24, 1999, did, purposely or knowingly, and with sufficient culpability for the commission of an offense, engage in conduct which, if successful, would constitute or result in a violation of Section 2907.02 of the Revised Code, in violation of Section 2923.02(A)(1) of the Ohio Revised Code, a Felony in the Second Degree, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.
This count in the indictment contained every element of the offense charged under R.C. 2923.02 and also provided an identification of the offense alleged to have been attempted, namely rape, in violation of R.C. 2907.02.[5] Hence, we conclude that the indictment sufficiently charged the offense of attempted rape and that, therefore, Mr. Lute had sufficient notice of the charges against him. Mr. Lute's eighth assignment of error is overruled.
 H.
Tenth Assignment of Error
 DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HIS MOTION FOR JUDGMENT OF ACQUITTAL AS TO ATTEMPTED RAPE WAS OVERRULED.
Eleventh Assignment of Error
 DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE AGGRAVATED BURGLARY CHARGE WAS NOT DISMISSED.
In his tenth and eleventh assignments of error, Mr. Lute contends that the trial court erred in overruling his Crim.R. 29 motion for acquittal as to aggravated burglary and attempted rape. We disagree.
Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt.State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
Mr. Lute was convicted of aggravated burglary, in violation of R.C.2911.11(A)(1), which provides in relevant part:
 No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if * * * [t]he offender inflicts, or attempts or threatens to inflict physical harm on another[.]
The jury also found Mr. Lute guilty of attempted rape, in violation of R.C. 2923.02(A) and 2907.02. The attempt statute provides that "[n]o person, purposefully or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A). R.C. 2907.02(A)(2) provides that "[n]o person shall engage in sexual conduct with another when the offender purposefully compels the other person to submit by force or threat of force." The term "[s]exual conduct" includes "vaginal intercourse between a male and female[.]" R.C. 2907.01(A).
In the present case, Ms. Oleksa testified that on January 24, 1999 at approximately 6:30 a.m., she was sleeping in her mobile home located in Lorain County, Ohio and woke up because her alarm system began beeping. She crawled to the foot of her bed, looked down the hallway, and saw Mr. Lute coming toward her. She recognized him by his physical build and his voice, and later identified Mr. Lute by name to the 911 operator.[6]
Ms. Oleksa began screaming, retreated to the middle of her bed, and asked him what he wanted. Mr. Lute responded, "You know what I want, bitch, and if you don't give it to me, I'll kill you." He then grabbed her by the ankles and pulled her to the foot of the bed and repeatedly tried to spread her legs apart. Ms. Oleksa testified that she struggled to free herself and that eventually Mr. Lute left her trailer. She then turned off her security system and called 911. Officer Dan Smith of the City of Lorain Police Department was immediately dispatched to Ms. Oleksa's residence and testified that the door to Ms. Oleksa's home had been kicked in and that the padded bed rails of her waterbed had been knocked off and the bedding was laying on the floor. After carefully reviewing the record, we find that the trial court did not err in overruling Mr. Lute's Crim.R. 29 motion for acquittal as to the aggravated burglary and attempted rape charges. Mr. Lute's tenth and eleventh assignments of error are overruled.
 I.
Twelfth Assignment of Error
 DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS VINDICTIVELY SENTENCED FOR GOING TO TRAIL [sic].
In his twelfth assignment of error, Mr. Lute asserts that the trial court impermissibly increased his sentence because he exercised his right to trial. We disagree.
A criminal defendant should never be punished for exercising his constitutional right to trial or for refusing to enter into a plea agreement. State v. O'Dell (1989), 45 Ohio St.3d 140, paragraph two of the syllabus. "Therefore, although sentencing is generally left to the sound discretion of the trial judge, appellate courts have found that the trial court abuses its discretion when the record affirmatively demonstrates that defendant received an enhanced sentence in retaliation for rejecting a plea offer." State v. Warren (1998), 125 Ohio App.3d 298,307. In the present case, Mr. Lute argues that the following statement by the trial court demonstrates that he was vindictively sentenced for exercising his right to trial:
 Few things in life are more frightening then to have the door of one's home kicked in, to have the privacy of one's home invaded in the middle of the night. The Jury has found you guilty. I hear absolutely no remorse. The only thing I have heard from you throughout the course of this trial is an attempt to besmirch the character of others. I can think of no reason not to impose a substantial prison term.
(Emphasis added.) However, we find that the above quoted language does not affirmatively evidence the trial court's imposition of a penalty upon Mr. Lute for exercising a right to trial, but rather demonstrates the trial court's concern regarding Mr. Lute's lack of remorse and unwillingness to accept responsibility for his actions. Mr. Lute's twelfth assignment of error is overruled.
 J.
Thirteenth Assignment of Error
 DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS IMPROPERLY SENTENCED WITHOUT EVEN A COLORABLE CONSIDERATION OF THE STATUTORY CRITERIA.
Mr. Lute argues that the trial court erred in imposing a prison sentence for his felony conviction without making the statutorily required findings pursuant to R.C. 2929.13. Furthermore, he asserts that, even if the trial court did not err in imposing a prison term, the trial court erred in imposing a prison term that exceeded the minimum prison term without making the statutorily required findings pursuant to R.C. 2929.14. We disagree.
Our standard of review is controlled by R.C. 2953.08(G)(1), requiring us to determine if the trial court clearly and convincingly acted contrary to law or the record. Clear and convincing evidence is that "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford
(1954), 161 Ohio St. 469, paragraph three of the syllabus.
"[F]or a felony of the first or second degree * * * it is presumed that a prison term is necessary in order to comply with the purposes and principles of sentencing under section 2929.11 of the Revised Code." R.C. 2929.13(D).
R.C. 2929.14(A) governs the imposition of prison terms for felony convictions, stating, in relevant part:
 (1) For a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine, or ten years.
 (2) For a felony of the second degree, the prison term shall be two, three, four, five, six, seven, or eight years.
R.C. 2929.14(B) and (C), in turn, govern the imposition of minimum and maximum sentences within this statutory range. R.C. 2929.14(B) relates to minimum sentences and provides in relevant portion:
 if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
The Ohio Supreme Court has interpreted this statute to require that
 unless a court imposes the shortest term authorized on a felony offender who has never served a prison term, the record of the sentencing hearing must reflect that the court found that either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence.
State v. Edmonson (1999), 86 Ohio St.3d 324, 326. However, "R.C.2929.14(B) does not require that the trial court give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence." (Emphasis original.) Id.
In the case sub judice, Mr. Lute was sentenced to nine years for aggravated burglary and seven years for attempted rape, which sentences were to be served concurrently. He was not previously incarcerated. First, Mr. Lute argues that the trial court erred in imposing a prison sentence for his felony conviction without making the statutorily required findings pursuant to R.C. 2929.13. However, there was a statutory presumption in favor of a prison term, as Mr. Lute was convicted of a first degree felony (aggravated burglary) and a second degree felony (attempted rape). See R.C. 2929.13(D).
Mr. Lute also challenges the trial court's decision to sentence him to more than the minimum sentence for both aggravated burglary and attempted rape. As mandated by the Ohio Supreme Court in Edmonson, the trial court must have made one of the statutorily required findings enumerated in R.C. 2929.14(B) on the record when it sentenced Mr. Lute to more than the minimum prison term. Although the trial court discussed, during the sentencing hearing, its reasons for imposing a substantial prison term, the court did not adequately make the findings enumerated in R.C.2929.14(B) for imposing more than the minimum prison term, at the sentencing hearing. However, in the trial court's sentencing journal entry, we find that the trial court made the requisite findings under R.C. 2929.14(B), concluding that the shortest prison term would demean the seriousness of Mr. Lute's conduct and would not adequately protect the public from future crime by Mr. Lute. See State v. Riggs (Oct. 11, 2000), Summit App. No. 19846, unreported, at 3-4. Accordingly, Mr. Lute's thirteenth assignment of error is overruled.
 K.
Fourteenth Assignment of Error
 DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT CLASSIFIED DEFENDANT AS A SEXUALLY ORIENTED OFFENDER.
In his fourteenth assignment of error, Mr. Lute argues that he was denied due process of law when the trial court classified him as a sexually oriented offender with no notice and without a meaningful hearing. However, this court has previously explained that "`[p]ursuant to R.C. 2950.04, a defendant who has been convicted of or pleaded guilty to a sexually oriented offense must register in accordance with the statute * * *. This duty arises regardless of whether a sexual predator determination hearing is held pursuant to R.C. 2950.09 or not.'" (Emphasis omitted.) State v. Smith (June 23, 1999), Lorain App. No. 98CA007070, unreported, at 4, quoting State v. Rimmer (Apr. 29, 1998), Lorain App. No. 97CA006795, unreported, affirmed (1998), 84 Ohio St.3d 48. Therefore, "[t]he duties arising from a defendant being a sexually oriented offender are independent of a sexual predator hearing and arise not by court order, but by statutory imposition." Smith, supra, at 3. Accordingly, Mr. Lute became subject to the reporting requirements of R.C. 2950.04 when he was convicted of attempted rape, which is a sexually oriented offense pursuant to R.C. 2950.01(D)(7), regardless of whether the trial court held a hearing. Mr. Lute's fourteenth assignment of error is overruled.
 III.
Appellant's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ WILLIAM G. BATCHELDER
BAIRD, J., CONCURS.
[1] Mr. Lute's mother had called him approximately five hours before he was arrested to inform him that the police were looking for him.
[2] Lieutenant Poli testified that he Mirandized Mr. Lute at the police station.
[3] Mr. Lute failed to object to these questions during trial, and therefore, has waived all but plain error on appeal. Crim.R. 52(B).
[4] The additional witness was John Mowery, Director of Lorain County 911.
[5] Although a bill of particulars cannot support or defeat a motion to dismiss an indictment because it cannot cure a defect therein, State v.Silos (1995), 104 Ohio App.3d 23, 26, we note that in this case, the State filed a bill of particulars which stated:
 On or about January 24, 1999, the defendant broke the door and door frame of a trailer located at 3948 Reid Avenue, #53, in the city of Lorain, which was the home of Melissa Oleksa. Ms. Oleksa observed the defendant running toward her and asked him what he wanted. The defendant told her "you know what I want bitch and if you don't give it to me I'll kill you." Ms. Oleksa begged the defendant to leave her alone and attempted to cover herself up and crawl to the top of the bed. The defendant grabbed her by the ankles, pulled her to the bottom of the bed, and tried numerous times to force her legs apart. The victim continued to fight off the defendant and after a couple of minutes the defendant left the residence.
[6] The 911 audiotape was admitted into evidence and played for the jury.