OPINION
Ray L. Greene appeals from his conviction in the Clark County Common Pleas Court of trafficking in drugs within 1000 feet of a school in violation of R.C. 2925.03.
Testimony at Greene's trial revealed that Officers Michael Varner and David Burnett of the Springfield Police Department were conducting surveillance in an area of Springfield known for drug trafficking. During the surveillance on Euclid Avenue the officers observed Greene flag down several vehicles and lean into the driver's side of the vehicles. The officers testified this conduct was consistent with drug selling.
Officer Varner testified he approached Greene in plain clothes and that Greene offered to sell him crack cocaine. Varner said Greene reached into his front pants pocket, and removed a rock wrapped in tissue and put it in Varner's hand. Varner asked Greene if the rock was "good shit" which Greene replied it was, and Varner could taste it to verify its authenticity.
Varner told Greene he needed to get money from his friend and would return to buy the crack. Varner said Greene took back the "rock" and walked away to the porch of a nearby house and gave something to an unidentified male. Varner said he and Burnett returned and arrested Greene for offering to sell crack cocaine to Varner. When Greene was searched, no crack cocaine was found but two crack pipes and a piece of tissue was also recovered.
The pipes were examined at the crime laboratory and one of the pipes was determined to contain crack cocaine. The officers also determined the drug transaction took place within 1000 feet of a school.
Greene testified and admitted he had the conversation with Varner about drugs. Greene denied offering to sell drugs to Varner and said Varner's conversation about the drug purchase was with the person on the porch of the house at 19 West Euclid. Greene admitted to using crack cocaine but denied offering to sell any of the drug to Officer Varner.
Greene was indicted on November 1, 1999. On January 7, 2000, a pre-trial conference was conducted in which the prosecutor informed the trial court that he had provided the defendant discovery and a written offer to reduce the charge by deleting the "school specification." (P.T. 3). The prosecutor indicated he would recommend, as part of the plea bargain, a community control sanction if the presentence investigation revealed Greene was not currently on probation, parole, or had previously served a prison term.
Greene's counsel acknowledged receipt of the discovery packet. Greene was also provided a copy of discovery and after a short recess he informed the court he had a problem with the State's plea offer because he had served a prison term for felonious assault in London, Ohio in 1981. Greene also informed the court his state record was clean since 1988 (P.T. 7). (Emphasis ours).
Greene turned down the State's plea offer and the matter proceeded to trial. The following colloquy occurred during the cross-examination of Greene:
 Q. Mr. Greene, you have prior felony convictions for theft and forgery?
A. Yes, I do, sir.
 MR. THOMAS: Your Honor, I'm going to object. Can we approach the bench?
THE COURT: Yes, you may.
 (WHEREUPON, a conference was held at the bench between Court and Counsel out of the hearing of the jury but made a part of the record as follows.)
 MR. THOMAS: I don't know what the prosecutor's been referring to; but we've never been disclosed any copy of the Defendant's criminal record, which is discoverable under Criminal Rule 16.
 MR. COLLINS: That was disclosed. It shows the conviction. It was originally charged as robbery; but it was indicted as a forgery and a theft; and that's the sentencing received.
 MR. THOMAS: Well, how are we supposed to know. Based on that, there's a condition of probation on there.
MR. COLLINS: Well, it's still the same.
 MR. THOMAS: Well, that's a certified copy. I mean that's what it shows.
THE COURT: Did you receive this document?
 MR. THOMAS: I received a document like that without this stuff on it.
 MR. COLLINS: I wrote this stuff on here myself. And there's clearly nothing that says anything about a conviction for forgery, just an "I" which generally means an indictment.
MR. COLLINS: What it shows is a conviction for robbery.
 MR. THOMAS: Isn't even a certified copy of that. And you're telling us this isn't correct because that isn't what it is.
 MR. COLLINS: What I'm telling you is that was the original charge, this was what it was indicted on, and this is how it was disposed of.
 MR. THOMAS: Well then he wouldn't have been convicted of theft and forgery.
MR. COLLINS: Convicted of both theft and forgery on 5/13/88.
 MR. THOMAS: Also, this is an arrest record of a Charles Greene. There's no reference on here.
MR. THOMAS: Yeah, where.
THE COURT: Right here.
 MR. THOMAS: Yeah, where somebody wrote it in, there's not even an aka on it. If you bothered to look it up. If it says Ray Greene aka Charles Greene. There's no reference on here.
 MR. THOMAS: We ran Ray Greene in the clerk's office and it didn't come up with anything.
MR. COLLINS: That's how it was indicted, Ray L. Greene.
MR. THOMAS: Well, I mean this particular one, this 88 didn't.
 MR. COLLLINS: It's how he's indicted, that's how the judgment entry of conviction goes on.
 MR. THOMAS: I just think we're getting sandbagged if we're not gonna be disclosed he has a record of conviction and we get this thing that doesn't show it as forgery with no disposition on it, a different date in the robbery charge without his telling us what that was.
 THE COURT: And how would that have changed your proceedings today?
 MR. THOMAS: Well certainly, certainly there would have been more considered [bout whether or not to place the Defendant on the stand. He's been convicted of a crime of false actually two crimes of falsehood because we have a forgery, which I saw that. We ran his name in the clerk's office computer as Ray Greene, which is what we had or what we knew him by. It didn't come up as Ray Greene and we assumed — the conclusion I came to when I told the investigator, well this isn't even his arrest record because it has a Charles Greene on it.
 THE COURT: And that report on it also had the name of Charles Greene. Did you look up the indictment of Charles Greene?
 MR. THOMAS: No, because we didn't think it was our guy. I mean, you know, the State's supposed to supply us with that.
 MR. COLLINS: I somewhat doubt the sincerity since we all have known for a while. That Mr. Greene was on parole. And that record indicates he was on parole.
MR. THOMAS: Well in 1981, certainly.
 MR. COLLINS: I mean that's included in that record and now you're saying, oh, I don't think it was the same guy.
THE COURT: Objection's overruled, gentlemen.
MR. THOMAS: Thank you.
(Continuing in the hearing of the jury.)
MR. COLLINS: I have no further questions, Your Honor.
THE COURT: Anything else?
 REDIRECT EXAMINATION
BY MR. THOMAS:
 Q. Yeah, that prior conviction that the prosecutor brought up, that was from one case number, right, from 1988.
A. Yes, sir.
Q. You had any convictions since 1988?
 A. No, sir, I been living a very clean, you know, productable life.
MR. THOMAS: Thank you very much.
In a single assignment of error, Greene contends he was denied a fair trial when the State wilfully failed to provide him a copy of his criminal record as required by Crim. R. 16.
Greene argues that had he known the State planned to impeach him with his theft and forgery convictions in 1988 he would never have presented the defense at trial. (Appellant's brief at 2). Greene argues that the trial court should have granted a mistrial when the court discovered that the State had failed to provide defendant's arrest record to his counsel.
The State has not favored us with a brief in this matter but it does appear that State v. Scudder (1994), 71 Ohio St.3d 263 sets forth a tripartite test for determining whether a trial court abused its discretion in admitting evidence not properly disclosed pursuant to Crim. R. 16. The court must determine whether there was (1) a wilful violation of the rule, (2) whether the discovery material would have benefitted the accused in preparing his defense, or (3) the accused was unfairly prejudiced.
Defense counsel did not have the discovery material it received from the prosecution marked as an exhibit for purposes of our appellate review. Although the colloquy is quite confusing, it appears the prosecutor provided Greene and his counsel with a criminal record marked "Charles Greene" indicating that "Charles Greene" was convicted of theft and forgery in 1988. It appears that defense counsel made no inquiry of why the prosecutor provided him with a Charles Greene's criminal record. The defendant admitted to the court at the pre-trial that he hadn't been in trouble since 1988 and he admitted at trial he was convicted of theft and forgery in 1988.
Defense counsel did not request a mistrial, so the trial court could hardly abuse its discretion in not granting one. There is no evidence that the prosecutor engaged in a wilful violation of Crim.R. 16. The defendant raised the defense of entrapment. It is difficult to imagine what different defense the defendant would have raised had counsel been aware of the defendant's convictions in 1988. The defendant was not denied a fair trial. The assignment of error must be overruled.
The judgment of the trial court is Affirmed.
FAIN, J., and GRADY, J., concur.