OPINION
{¶ 1} Defendant, Terry L. Young, appeals from his conviction for the murder of James Dixon. Defendant was acquitted of companion charges of kidnaping Dixon and another man, Dwight Broom.
 {¶ 2} The evidence demonstrates that on March 15, 2001, Defendant and Dwight Broom traveled from Dayton to Greenville, Ohio to buy drugs. Defendant drove, and after they reached Greenville he robbed Broom at gunpoint, taking Broom's cell phone and diamond ring before putting Broom out of the car.
 {¶ 3} Defendant returned to Dayton, where he encountered a group of men. One of those was James Dixon. Defendant and Dixon then set out in Defendant's car to obtain drugs. They stopped at the intersection of Sylvan and Mia Streets in Dayton. Defendant and Dixon were seen to be arguing. As Dixon opened the passenger door and made to get out of the car, Defendant shot Dixon in the back. Dixon ran a short distance and then collapsed and died. Defendant was later captured by police.
 {¶ 4} Defendant was indicted on one court of murder, R.C. 2903.02(B), in connection with Dixon's death. He was also indicted on two counts of kidnaping, R.C. 2905.01, in connection with his encounters with Broom and Dixon. Firearms specifications were added to all three charges per R.C. 2941.145.
 {¶ 5} The jury acquitted Defendant of the two kidnaping charges but returned a guilty verdict on the murder charge. Defendant appeals.
 FIRST ASSIGNMENT OF ERROR {¶ 6} "The Trial Court Committed Prejudicial Error When It Refused Appellant's Request To Instruct On The Inferior Offense Of Voluntary Manslaughter."
 {¶ 7} Defendant was charged with the murder of James Dixon in violation of R.C. 2903.02(B), which provides:
 {¶ 8} "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."
 {¶ 9} A trial court must fully and completely give all instructions relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact-finder. State v. Comen
(1990), 50 Ohio St.3d 206. If under any reasonable view of the evidence, it is possible to find the defendant not guilty of a greater offense with which he is charged and guilty of a lesser offense, the instruction on the lesser offense must be given. State v. Wengatz (1984), 14 Ohio App.3d 316. Where the evidence in a criminal case would support a finding by the jury of guilt of a lesser offense included in the offense for which the Defendant was tried, it is prejudicial error for the trial court to refuse a defense request to instruct on the lesser offense. State v. Parra
(1980), 61 Ohio St.2d 236.
 {¶ 10} Prior to trial Defendant filed written requests that the trial court instruct the jury on the offense of voluntary manslaughter in accordance with R.C. 2903.03. That statute provides:
 {¶ 11} "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another or the unlawful termination of another's pregnancy."
 {¶ 12} Voluntary manslaughter is an offense of inferior degree to murder. State v. Shane (1992), 63 Ohio St.3d 630, 632. The test for whether the trial court should instruct the jury on voluntary manslaughter when the defendant is charged with murder is the same test applied when an instruction on a lesser included offense is sought. Id. The instruction must be given when the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter. Id.
 {¶ 13} The principal difference between murder and voluntary manslaughter is that the latter offense includes the mitigating element of serious provocation by the victim that is reasonably sufficient to incite the defendant into using deadly force. State v. Thomas (January 10, 2003), Montgomery App. No. 19131. In determining for purposes of voluntary manslaughter what constitutes reasonably sufficient provocation, an objective standard is first applied to determine whether the provocation was reasonably sufficient to bring on a sudden passion or fit of rage. Id. The provocation must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control.Shane, supra; State v. Mack, 82 Ohio St.3d 198, 1998-Ohio-375; Thomas,supra. Only if that standard is met does the inquiry then shift to a subjective standard; whether this particular defendant, given his emotional and mental state and the circumstances that surrounded him at the time of the crime, was under the influence of a sudden passion or in a sudden fit of rage. Id.
 {¶ 14} The trial court refused Defendant's request to instruct the jury on voluntary manslaughter, finding the evidence in this case does not satisfy the objective test because it does not demonstrate that the victim's conduct constituted provocation reasonably sufficient to arouse the passions of an ordinary person beyond the power of his or her control and warrant that person in using deadly force.
 {¶ 15} According to Defendant's version of the events, while he and James Dixon were inside the car arguing over the diamond ring Defendant had stolen from Broom, Dixon pulled a knife on Defendant, punched Defendant in the face with his fist, took Defendant's car keys out of the ignition, and ordered Defendant to get out of the car. Defendant testified that Dixon's attempt to rob him made Defendant "angry to a certain extent" (T. 794), that he was "frightened" and "scared" (T. 873), and that as a result he pulled the gun from beneath the driver's seat and shot Dixon in the back as he made to get out of the car. (T. 847). Defendant added that he believed that Dixon intended to come around the car and pull Defendant out through the driver's side door in order to steal the car from him, and believed that he was at risk of serious physical harm by Dixon. (T. 871-872).
 {¶ 16} We do not agree that the evidence Defendant offered fails to satisfy the objective prong of the reasonable provocation test, as the trial court found. The altercation was not mere words. Shane. Dixon struck Defendant in the eye, using enough force to leave a mark on Defendant's face. Dixon attempted to rob Defendant, and threatened his life with a knife that Defendant described as "maybe a steak knife, or a fillet knife . . . fillet fish with. Had a long skinny blade on it." (T. 791). That provocation, weighed objectively is in our view reasonably sufficient to bring on a sudden passion or fit of rage. Thomas.
 {¶ 17} Having rejected Defendant's requested instruction on the objective prong of the reasonable provocation test, the trial court never considered whether the evidence satisfied the subjective prong: that the Defendant was, in fact, under the influence of a sudden passion or fit of rage and as a result shot Dixon. Because that presents an issue of law, we may weigh the evidence relevant to the matter independently. In doing that, we conclude that the evidence Defendant offered, which concerned for the most part his fear of harm at Dixon's hands, though it justified the self-defense instruction the trial court gave, does not satisfy the subjective prong of the test for reasonable provocation. Therefore, Defendant was not entitled to a voluntary manslaughter instruction and could not be prejudiced by the trial court's failure to give one.
 {¶ 18} The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 19} "The Trial Court Denied Appellant The Right To Confront Witnesses When It Refused To Allow Defense Counsel To Fully Cross-examine Prosecution Witnesses."
 {¶ 20} Defendant attempted to impeach several of the State's witnesses with prior statements they made, claiming that the statements were inconsistent with their trial testimony. Defendant complains in this assignment of error that the trial court abused its discretion and denied him his right to confrontation and effective cross-examination by refusing to admit evidence of those prior inconsistent statements. The trial court refused to admit this evidence on a finding that the inconsistencies were not material or a matter of any consequence to the issues to be determined.
 {¶ 21} Evid. R. 613 limits the use of extrinsic evidence to impeach a witness with a prior inconsistent statement:
 {¶ 22} "(B) Extrinsic evidence of prior inconsistent statement of witness. Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:
 {¶ 23} "(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;
 {¶ 24} "(2) The subject matter of the statement is one of the following:
 {¶ 25} "(a) A fact that is of consequence to the determination of the action other than the credibility of a witness;
 {¶ 26} "(b) A fact that may be shown by extrinsic evidence under Evid. R. 608(A), 609, 616(A), 616(B) or 706;
 {¶ 27} "(c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence."
 {¶ 28} Evid. R. 613(B) codifies the common law collateral matter doctrine. Under that doctrine, a witness's prior statement inconsistent with his trial testimony relating to a collateral matter may not be proved by extrinsic evidence; that is, from some source other than the declarant. It may, however, be the subject of inquiry while the declarant is on the witness stand. If counsel questions a witness about his prior inconsistent statement concerning a collateral matter, counsel must accept the witness' answer because extrinsic evidence is not available to rebut what the witness says in his testimony. Counsel may press the witness for inconsistencies, but may not introduce other witnesses or documentary evidence to prove or rebut the prior statement. Weissenberger, Ohio Evidence, Chapter 613.
 {¶ 29} Cross-examination of a witness, including the right to impeach a witness' credibility, is a constitutional right, but the extent of cross-examination with respect to appropriate subjects of inquiry is within the trial court's sound discretion. State v. Green (1993),66 Ohio St.3d 141, 147-148. Trial judges have wide latitude to impose reasonable limits on cross-examination based upon concerns about harassment, prejudice, confusion of the issues, witness' safety, or interrogation that is repetitive or only marginally relevant. Id.
 {¶ 30} Whether to admit a prior inconsistent statement that is collateral to the issues being tried and pertinent only to the witness' credibility is a matter within the trial court's sound discretion. Statev. Riggins (1986), 35 Ohio App.3d 1. Absent an abuse of discretion, an appellate court will not reverse a trial court's decision as to the admissibility of evidence. State v. Martin (1985), 19 Ohio St.3d 122,129. An abuse of discretion means more than just an error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. State v. Adams (1980),62 Ohio St.2d 151.
 {¶ 31} Defendant argues that there were inconsistencies between the trial testimony of Dwight Broom and statements Broom made to Greenville police; first in his 911 call reporting that Defendant had robbed him at gunpoint and then later during a videotaped interview.
 {¶ 32} The jury acquitted Defendant on the charge that he kidnapped Broom. Defendant was only convicted for the murder of James Dixon. Defendant admitted he shot Dixon in the back but claimed self-defense. Broom's prior inconsistent statements concerning his kidnaping and robbery are not matters of any consequence to whether Defendant later murdered Dixon. Thus, even assuming arguendo that the trial court erred in not admitting evidence of Broom's prior inconsistent statements, the error is harmless beyond a reasonable doubt because there is no reasonable possibility that it contributed to Defendant's conviction. Crim. R. 52; State v. Bayless (1976), 48 Ohio St.2d 73;Riggins, supra; Cornett, supra.
 {¶ 33} One of the group of several men that included Dixon when he and Defendant met was Marcus Caldwell, who testified concerning the encounter. Defendant sought to introduce the written statement Marcus Caldwell gave police that contains a statement inconsistent with Caldwell's trial testimony that he told Defendant he did not know where Defendant could obtain drugs. Defendant was permitted to question Caldwell on cross-examination about this prior statement, but the trial court refused to admit Caldwell's written statement to police because the inconsistency was not a matter of any consequence to the issues being tried: whether Defendant kidnaped Dwight Broom and kidnapped and murdered James Dixon.
 {¶ 34} Defendant was acquitted of all charges except the murder of James Dixon. With respect to that charge, Defendant admitted that he shot Dixon, but claimed self-defense. The prior inconsistent statement of Caldwell is not a matter of any consequence to that issue. Thus, even assuming arguendo that the trial court erred in refusing to admit evidence of Caldwell's prior inconsistent statement, there is no reasonable possibility that it contributed to Defendant's conviction, and thus the error is harmless.
 {¶ 35} Marcus Caldwell testified that James Dixon got into Defendant's car after Defendant said he needed to go to his brother's house to get a hundred dollars to pay for crack cocaine. During his case-in-chief Defendant sought to introduce a statement of Tammy Gostomsky that Caldwell told her that James Dixon went with Defendant to help Defendant sell a diamond ring Defendant had taken from Dwight Broom in exchange for drugs. Once again, the trial court refused to admit this extrinsic evidence of a prior inconsistent statement because it was not a matter of any consequence to the issues being tried.
 {¶ 36} Why James Dixon got into Defendant's car and went with him may have been a fact of some consequence to the charge that Defendant kidnaped Dixon. However, even assuming arguendo that the trial court erred in not admitting evidence of Caldwell's prior inconsistent statement to Tammy Gostomsky, Defendant was found not guilty of kidnaping Dixon. Defendant was convicted only for the murder of James Dixon. With respect to that offense, Defendant admitted that he shot Dixon but claimed self-defense. Caldwell's prior inconsistent statement about why Dixon went with Defendant is not a matter of any consequence to either the murder charge or the self-defense claim. Thus, the trial court's error, if any, in not admitting evidence of the prior inconsistent statement was harmless beyond a reasonable doubt.
 {¶ 37} The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR {¶ 38} "The Trial Court Fashioned An Ineffective Remedy For The State's Failure To Comply With The Discovery Order."
 {¶ 39} Defendant argues that the trial court abused its discretion when it refused his request to exclude the testimony of Marcus Caldwell and Lavern Morris because the State violated Crim. R. 16 by refusing to disclose addresses and/or phone numbers for these witnesses.
 {¶ 40} Crim. R. 16(B)(1)(e) requires the prosecutor to disclose the names, addresses and criminal records of its prospective witnesses at trial. However, a trial court has considerable discretion in fashioning an appropriate remedy for a discovery violation. Crim. R. 16(E)(3); Statev. Scudder, 71 Ohio St.3d 263, 268, 1994-Ohio-298.
 {¶ 41} At the commencement of the trial defense counsel complained to the trial court that he had been unable to contact two of the State's witnesses, Marcus Caldwell and Lavern Morris, at the addresses provided by the State in discovery. The trial court ordered the prosecutor to provide to the defense Caldwell's cell phone number and the address of his grandmother and a phone number and the most recent address for Morris, to the extent it had that information.
 {¶ 42} The following day Defense counsel informed the trial court that the prosecutor had called him the night before and refused to provide contact information for Caldwell and Morris. Defendant requested a continuance of the trial to interview these witnesses. The prosecutor responded that he had recently been in contact with these witnesses and they both indicated that they did not want to speak with the defense prior to trial.
 {¶ 43} The trial court ordered both Caldwell and Morris, who were in the courthouse waiting to testify at trial, brought into chambers individually. The court then questioned each witness about whether they were willing to speak with defense counsel before they testified. Both Caldwell and Morris indicated to the trial court that they had decided of their volition to not speak with defense counsel, except during trial.
 {¶ 44} The trial court ruled that Defendant suffered no prejudice as a result of the State's failure to provide contact information for these two witnesses because, even had defense counsel contacted these witnesses before trial, they would have refused to speak with him. Thus, the trial court decided that the witnesses would be permitted to testify.
 {¶ 45} Even assuming, arguendo, that the prosecutor violated Crim. R. 16 by failing to provide addresses and/or phone numbers for Caldwell and Morris during pretrial discovery, and in compliance with the court's order, on this record it is clear that Defendant suffered no prejudice as a result. Accordingly, no abuse of discretion has been demonstrated with respect to the trial court's decision to allow these witnesses to testify at trial. As for Defendant's speculation that these witnesses might have been willing to talk with the defense had they been contacted weeks or months earlier, this record does not demonstrate any such efforts by the defense to contact these witnesses or raise any issue about the inability to do so until just prior to trial. No abuse of discretion is demonstrated.
 {¶ 46} The third assignment of error is overruled. The judgment of the trial court will be affirmed.
FAIN, P.J. and WOLFF, J., concur.