[Cite as *State v. Hughes*, 2013-Ohio-1551.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98669**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JAMES E. HUGHES

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-557592

**BEFORE:**   S. Gallagher, P.J., Kilbane, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:**   April 18, 2013

**ATTORNEY FOR APPELLANT**

Michael V. Heffernan
75 Public Square
Suite 700
Cleveland, OH   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Brad S. Meyer
Assistant Prosecuting Attorney
Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio   44113

SEAN C. GALLAGHER, P.J.:

**{¶1}** Defendant-appellant, James Hughes, appeals his convictions for breaking and entering, theft, and possessing criminal tools. He asserts that the record evidence does not support his convictions. He further contends that a discovery violation occurred that entitles him to a new trial. For the reasons that follow, we affirm.

**{¶2}** Peter Gordon, D.D.S., operates a dental office in Beachwood, Ohio. On August 8, 2011, Gordon arrived at his office around 7:15 a.m., where he was met by the dental assistant and saw "a lot of debris all over the place." The doorframe on the main entrance was "jimmied loose." The lab had been broken into, as well as the conference room. Gordon called the police.

**{¶3}** Gordon had closed the office on the previous Saturday around 1:00 p.m.

**{¶4}** A television, valued at $400,[1] was missing from the conference room. Cabinet and desk drawers were open, a window was broken, and the petty cash box was open on the floor. Approximately $150 to $175 was missing from the cash box. A power drill, valued at $50, was also missing. Gordon spent approximately $3,100 repairing the damage to his office.

**{¶5}** The office was equipped with two motion cameras, one facing the front door and the other facing the front desk.

---

[1] Gordon had received the television as a "bonus" for purchasing other office equipment, and he did not replace it.

{¶6} Exhibit No. 38 is video surveillance that the cameras recorded on August 7, 2011. It depicts somebody entering the front door, walking behind the desk, opening the top drawer and then closing the top drawer, and then opening the bottom drawer.

{¶7} Despite the damage to the office, Gordon was still able to see patients on that day. However, the break-in interfered with his staff's ability to conduct administrative business, such as processing insurance and scheduling appointments.

{¶8} The defense objected to the testimony of Officer Matthew Grams because the state had not identified him as a potential witness. The state responded that it had provided Officer Grams's arrest report to the defense at the outset of the case and that it was discussed during the pretrials. The state indicated if Officer Grams's name was omitted from the witness list, it was inadvertent. The state's witness list did reserve the right to call any of the people mentioned in the police report, which was authored by Officer Grams. The court instructed the state to present a different witness in order to allow the defense time to speak with Officer Grams. Defense counsel did speak with Officer Grams and confirmed the defense had his police report for "quite some time." Over defendant's continuing objection, the court allowed Officer Grams to testify.

{¶9} Officer Grams arrested defendant on August 13, 2011, around 11:20 p.m. Officer Grams was on patrol duty when he observed a car sitting behind a business on Northfield Road after business hours. The car drove away at a high rate of speed, drove over a curb and through a grassy field. Officer Grams pursued the vehicle and initiated a traffic enforcement stop. He identified the driver as defendant James Hughes.

Officer Grams discovered that defendant had multiple suspensions and an outstanding warrant from the Parma Police Department. Officer Grams arrested defendant for driving under suspension. Pursuant to the vehicle inventory, Officer Grams found a crowbar, a white T-shirt, a flashlight, a pair of Mechanix gloves, and a small sledgehammer in the car. Officer Grams testified that the items he observed at the time of defendant's arrest appear to be the same as some items he observed on the videotape of the break-in.

{¶10} Officer Lieb testified that he responded to a call of breaking and entering at Gordon Dental on August 8, 2011, around 7:35 a.m. He observed the broken window and door, as well as debris, and the cash box lying on the floor in the reception area. He spoke with Dr. Gordon and some office employees. Officer Lieb obtained and reviewed the surveillance video footage and determined the exact time of the offense. He identified state's exhibit No. 30 as a frame capture of the suspect, which shows him with a pair of gloves, "a unique looking flashlight," and a pry bar. The suspect's face is obscured by a hoodie, and only the lower half of his face is visible. Officer Lieb affirmed that the office employees had named a potential suspect who was not defendant.

{¶11} Investigator Finucan testified that he processed the crime scene in this case. He took photographs and attempted to obtain fingerprints and DNA swabs. He was able to obtain a very partial fingerprint from the cash box but not enough to make any kind of comparison.

**{¶12}** Detective McFadden conducted a follow-up investigation in this case. He reviewed the video of the break-in, which occurred on August 7, 2011, at 10:17 p.m. He contacted the Northfield Village police after receiving a bulletin of defendant's arrest for a similar occurrence one week later. Det. McFadden forwarded a still copy of the suspect from the videotape, state's exhibit No. 30. The still shot depicted a portion of the suspect's face, a flashlight, the crowbar, and the gloves used during the break-in at the dental office. The Northfield Village officer confirmed his belief that the suspect matched defendant. Det. McFadden went to the Northfield Village Police Department and viewed the evidence that had been seized upon defendant's arrest. He photographed the items, including the flashlight, the gloves, and the crowbar. Det. McFadden concluded that the items were the same as those depicted on the video of the dental office break-in. He also compared defendant's booking photo with the suspect on the video and believed it was the same person. For that reason, Det. McFadden never investigated the other potential suspect that had been named by the dental office employees.

**{¶13}** By agreement of the parties, the theft count was amended to a first-degree misdemeanor.

**{¶14}** The trial court dismissed the vandalism count pursuant to defendant's Crim.R. 29 motion, but overruled the motion as to the remaining counts.

**{¶15}** The jury found defendant guilty of breaking and entering, theft, and possession of criminal tools, along with the furthermore specification. The court imposed sentence, and defendant has assigned three errors for our review on appeal.

**{¶16}** In his first and second assignments of error, defendant contends his convictions were not based on sufficient evidence and were against the manifest weight of the evidence.

**{¶17}** When an appellate court reviews a claim of insufficient evidence, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

**{¶18}** On the other hand, the weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *State v. Robinson*, 8th Dist. No. 96463, 2011-Ohio-6077, ¶ 14, citing *State v. Brindley*, 10th Dist. No. 01AP-926, 2002-Ohio-2425, ¶ 16. When presented with a challenge to the manifest weight of the evidence, an appellate court, after

> "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."

*State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). An appellate court

should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most "'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

{¶19} Employing each standard, we find that defendant's convictions were supported by sufficient evidence and were not against the manifest weight of it.

{¶20} Defendant maintains his convictions fail due to a lack of evidence probative of his identity as the person who committed these crimes. The evidence includes videotaped surveillance of the crime in progress. The tape depicts the suspect, what he was wearing, and items that were in his possession at the time of the offense. Defendant was arrested a week later with similar items, which the state contended were the same items used in the dental office break-in, including a hooded sweatshirt, gloves, a flashlight, and a crowbar. Further, defendant's booking photo was compared with the still shot of the person who committed the break-in. There was evidence from which the jury could reasonably conclude that the state had established defendant as the person who committed the crimes. Further, defendant's convictions were supported by the greater amount of credible evidence in the record such that his convictions were not a manifest miscarriage of justice.

{¶21} These assignments of error are overruled.

{¶22} In his final assignment of error, defendant argues that he is entitled to a new trial because the trial court permitted Officer Grams to testify. Defense counsel argued that the state had not identified Officer Grams as a potential trial witness. There is no

dispute that the state supplied the defense with a copy of Officer Grams's police report during discovery. The state also indicated it may call "any and all witnesses contained in the reports provided during discovery * * *." The court directed the state to call a different witness in order to allow the defense time to speak with Officer Grams before his testimony. Officer Grams testified concerning the events that were detailed in his police report, which the defense had for quite some time.

{¶23} When a prosecutor violates Crim.R. 16 by failing to provide the name of a witness, a trial court does not abuse its discretion in allowing the witness to testify where the record fails to disclose (1) a willful violation of the rule, (2) that foreknowledge would have benefitted the accused in the preparation of his or her defense, or (3) that the accused was unfairly prejudiced. *State v. Scudder*, 71 Ohio St.3d 263, 269, 643 N.E.2d 524 (1994), citing *State v. Heinish*, 50 Ohio St.3d 231, 553 N.E.2d 1026 (1990), syllabus.

{¶24} Crim.R. 16(L)(1) provides:

> The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

{¶25} Defendant does not claim that the state willfully omitted Officer Grams's name from its witness list, and the state indicated it was inadvertent. Defendant, through his attorney, had Officer Grams's report for use in preparing his defense. Defense counsel was allowed to speak with Officer Grams before the officer testified in court.

Officer Grams's testimony related to the incident detailed in his police report that had been provided to defendant. There was no unfair prejudice to defendant related to the inadvertent omission of Officer Grams's name from the witness list. The trial court did not abuse its discretion by allowing his testimony under the circumstances presented in this case.

{¶26} This assignment of error is overruled.

{¶27} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
EILEEN T. GALLAGHER, J., CONCUR